## MARTHA M. MARTIN *vs.* WILLIAM H. EVANS AND JOHN PRICE, Administrators of JAMES REED.

*Res Adjudicata—When Dismissal of a Bill in Equity is a Bar to Subsequent Litigation on the Same Subject—Absolute or Qualified Dismissal of Bill—Effective Decree.*

Whenever a decree dismissing a bill in equity fails to restrict its own scope, the presumption is that the issues raised by the proceedings had been disposed of on their merits, and they therefore become *res adjudicata.*

The broad terms of a decree dismissing a bill in equity cannot be limited by the opinion of the Court filed in the cause. The decree, and not the opinion, is the instrument with which the Court acts.

Plaintiff sued in trover to recover the value of certain coupon bonds alleged to have been converted by defendant's intestate. Defendants pleaded *res adjudicata,* and set forth the proceedings in an equity case previously instituted by the plaintiff to recover the same bonds. That bill was dismissed in absolute terms after a hearing. Plaintiff alleged that the bill was dismissed upon the ground that the Court had no jurisdiction because the remedy at law was ample. The opinion of the Equity Court was against the plaintiff on the merits, but also stated that a bill in equity could not have been maintained, even if the plaintiff's title had been made out. *Held,* that since there are no qualifying words in the decretal order dismissing the bill, to warrant the inference that the merits of the case were not finally adjudicated, or indicating that the dismissal was founded on purely technical grounds, the order of dismissal must be taken to be a final determination of the controversy and a bar to this action.

Appeal from a judgment of the Circuit Court for Allegany County overruling plaintiff's demurrer to defendant's plea.

The cause was submitted to the Full Bench on briefs by *A. A. Doub* and *A. A. Wilson,* for the appellant, and *Benjamin A. Richmond, D. James Blackiston* and *George A. Pearre,* for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

This is an action of trover.   The suit was brought by the appellant against the appellees, who are the administrators of James Reed, deceased.   The plaintiff seeks to recover the value of certain United States coupon bonds claimed by her as her property, and alleged in the declaration to have been converted by James Reed to his own use in his life-time.   To the declaration three pleas were filed.   With the first and third we are not concerned on this appeal ; but the second presents the question brought up on the record now before us.   The second plea is a plea of *res adjudicata*.   It sets forth with particularity and technical precision the pro-ceedings in an equity case at one time pending in the Cir-cuit Court for Allegany County, between the same parties who are the parties to this suit, and avers that the relief sought in that case was the recovery of the value of the identical bonds for the alleged conversion of which this ac-tion was subsequently instituted.   It further avers that to the bill in equity the defendants, who are also the defen-dants here, filed their answer flatly denying that the plain-tiff owned, as alleged in her bill of complaint, the bonds therein referred to, and it recites that after a general replica-tion had been filed, testimony was taken and the equity case was heard and was thereafter decided and determined adversely to the plaintiff on the merits.   With the plea, and as a part of it, there were filed a copy of the bill in equity and of the Court's opinion and the final order dismissing the bill.   To this plea thus setting up the defence that the exact and precise issue raised and controverted in this case had been antecedently passed upon and decided on its merits adversely to the plaintiff by a Court of competent jurisdiction in another proceeding between the same parties, the plaintiff demurred.   The Circuit Court for Allegany County entered judgment on the demurrer for the defen-dants and from that judgment this appeal has been taken.

Now, it is not denied and it could not well be disputed at this day, that if a question has once been tried and deter-

mined, without fraud or collusion, but on its merits by a Court having jurisdiction of the parties to the controversy and of the subject-matter involved therein, it cannot be again litigated between the same parties in the same, or in any other tribunal, so long as the adjudication remains unreversed and in full and operative effect. This doctrine, which is an old axiom of the law, was dictated by wisdom and, as observed in *Warwick* v. *Underwood*, 3 Head, 233, " is sanctified by age," and was founded on the broad principle that it is to the interest of the public there should be an end of litigation by the same parties and their privies over a subject once fully and fairly adjudicated. Recognizing this, the appellant seeks to avoid its application by insisting that the bill in equity was dismissed for the want of jurisdiction, and that the relief sought under it was denied, not because it was determined the plaintiff had no title to the bonds, but because it was decided there was an adequate remedy at law, and therefore, that the Equity Court was without jurisdiction to pass any decree adjudicating the title to the bonds at all. If the plea upon its face shows this state of facts then, of course, it presents no defence to this action and would be bad on demurrer. As already stated a copy of the bill of complaint and of the opinion of the Circuit Court accompanying its decretal order dismissing the bill, form part of the plea. The bill alleges in substance that the plaintiff therein, who is the appellant here, loaned the Frostburg Mining Company six thousand six hundred and fifty dollars to be secured by a mortgage ; that the mortgage was executed to James Reed who, it was intended, should hold it, though payable to him, in trust for her, she having furnished the amount loaned ; that she derived the money from the sale of certain United States Government bonds owned by her ; that Reed died suddenly and his administrators, the appellees in this case, assigned the mortgage before she could institute proceedings to have the trust in her favor established. She charged that she was entitled to have a trust declared in her favor as against the assets of

Reed to the amount of the mortgage which had enured to the benefit of his estate ; and that is the relief she sought. The answer denied that she had, or had had, any interest in the mortgage and disputed her asserted ownership of the government bonds alluded to in the bill. The fundamental inquiry, therefore, in the equity case, was whether she did own bonds which Reed converted and invested in the mortgage in his own name. In the opinion the learned Judge went fully into a discussion of the evidence adduced before him on the issue of the ownership of the bonds which, it appears, were claimed to have been an *inter vivos* gift made by Reed to the plaintiff; and after a careful and critical analysis and review of all the evidence he explicitly decided that the bonds were not the property of the plaintiff, but that they belonged to Reed. Having reached that conclusion on the merits, the Judge incidently, it would seem, observed later on in the same opinion : " I have thus, at the request of the solicitors in the case, gone into the merits and would dismiss the bill without regard to technical objections. But it seems to me to be perfectly clear that this proceeding could not be sustained at any rate, as at best it would be simply a conversion of the plaintiff's property by Reed, for which she had an ample remedy at law. If the bonds were her's she could have recovered in the suit she had on the law side of this Court, or she could have instituted an action of trover."

These few sentences are now seized by the plaintiff and are relied on by her to show that the Equity Court dismissed the bill for the want of jurisdiction to entertain it ; and the inquiry comes to this : Do these extracts from the opinion demonstrate, or can they be resorted to for the purpose of showing, that the bill in equity was dismissed, not because there was no decision on the merits, but because the Court was without authority to pass upon the merits at all ? The merits certainly were considered, discussed and decided. The opinion, if it can be consulted to measure the scope of the final order, leaves no room to doubt this. If the merits

had in reality nothing to do with the ultimate conclusion reached in the equity case, it is difficult to understand why they were considered or decided at all.   And if, in fact, the bill was dismissed solely for the want of jurisdiction in the Court to grant the relief asked and not because the evidence did not justify the granting of the relief, there would have been no occasion to advert to the merits.   Looking to the record alone it cannot be affirmed, except in a purely speculative way, which is too inconclusive to be the foundation of judicial action, that the final decision of the equity case was based on the want of jurisdiction to determine its merits, especially as there is nothing to disclose whether such a defence was taken in the answer.   The decretal order itself does not show upon what ground the bill was dismissed.   It is in these words : " It is adjudged, ordered and decreed this 5th day of October, in the year 1895, by the Circuit Court for Allegany County, sitting as a Court of Equity, that the bill of complaint filed in this case be and the same is hereby dismissed, and that the plaintiff pay the costs to be taxed by the Clerk of this Court."

Even if the opinion may be looked to for the purpose of ascertaining whether the Equity Court considered that there was an adequate remedy at law, still there are no qualifying words in the decretal order warranting the inference that the merits were not finally adjudicated, or indicating that the dismissal was founded on purely technical grounds. Whenever a decree dismissing a bill in equity fails to restrict its own scope, the presumption, according to the great preponderance of decided cases, ·is, that the issues raised by the proceedings have been disposed of on their merits and they therefore become *res adjudicata*.   When " the decree of dismissal is unqualified, it is presumed to be an adjudication on the merits adversely to the complainant, and constitutes a bar to further litigation of the same matters between the parties."   *Tankersley* v. *Pettis*, 71 Ala. .179; *Story's Eq. Pl.* 793 ; *Adams* v. *Cameron*, 40 Mich. 506 ; *Thompson* v. *Clay*, 3 T. B. Monr. 359 ; *Pelton* v. *Mott*, 11

Vt. 148; *Stickney* v. *Goudy*, 132 Ill. 213; *Kelsey* v. *Murphy*, 26 Pa. St. 78; *Foote* v. *Gibbs*, 1 Gray, 412; *Thurston* v. *Thurston*, 99 Mass. 39; 6 *Encyclo. Pl. & Pr.* 993, and the large number of cases there collected. In *Foot* v. *Gibbs*, *supra*, it was said : " There is nothing to indicate the grounds of dismissal in this case, except the fact of dismissal after an appearance for the defendants. But the authorities both in England and in this country are decisive that a general entry of ' bill dismissed ' with no words of qualification such as ' dismissed without prejudice,' or ' without prejudice to an action at law,' or the like, is conclusively presumed to be upon the merits and is a final determination of the controversy." And so in *Durant* v. *The Essex Co.*, 7 Wall. 107, the Supreme Court, in speaking of a decree dismissing a former bill between the same parties, said : " The decree dismissing the bill in the former suit in the Circuit Court of the United States being absolute in its terms, was an adjudication of the merits of the controversy and constitutes a bar to any further litigation of the same subject between the same parties. A decree of that kind, unless made because of some defect in the pleadings, or for want of jurisdiction or because the complainant has an adequate remedy at law, or upon some other ground which does not go to the merits, is a final determination. Where words of qualification, such as ' without prejudice,' or other terms indicating a right or privilege to take further legal proceedings on the subject do not accompany the decree, it is presumed to be rendered on the merits." And *Walden* v. *Bodley*, 14 Pet. 156; *Hughes* v. *U. S.*, 4 Wall. 237; *Bigelow* v. *Winsor*, 1 Gray, 301, and *Foote* v. *Gibbs*, 1 Gray, 412, were cited. The case of *Durant* v. *The Essex Co.*, *supra*, was followed and relied on in *Lyon* v. *Perin, &c., Mfg. Co.*, 125 U. S. 698.

The broad terms of the decretal order dismissing the bill cannot be limited, qualified or restricted by the opinion filed in the equity case. " The opinion of the Judge is the expression of the reasons by which he reaches his conclusions ; these may be consistent or contradictory, clear or confused.

The judgment or decree is the *fiat* or sentence of the law, determining the matter in controversy, in concise technical terms, which must be interpreted in their own proper sense. It would, we think, be of dangerous tendency to make the force· and effect of the most solemn official acts depend upon the various interpretations which ingenuity might suggest to the most carefully considered language introducing them." *State use of Bruner et al.* v. *Ramsburg et al.*, 43 Md. 333. Or as succinctly expressed in *Durant* v. *The Essex Co.*, *supra*, the *reason* for the signing of a decree " is no part of the judgment itself." The *decree* and not the *opinion* is the instrument through which the Court acts. *Woods, &c.* v. *Fuller*, 61 Md. 460.

Agreeing, as we do, with the Circuit Court that the controversy involved in this case was fully and finally determined by the decree in the equity case between the same parties, we affirm· its judgment with costs.

> *Judgment affirmed with costs*
> *above and below.*

(Decided January 6, 1897.)