This appeal grows out of a controversy between the parties as to the existence of a right of way from appellee's property over the appellant's land to the waters of White Hall creek, an estuary of the Chesapeake Bay, and it involves these facts:
In 1906 William P. Hall acquired from John E. Pettibone and wife a tract of 381 acres of land known as "Grammers Pleasant Plains" lying between the headwaters of the south fork of White Hall creek on the north and White Hall creek or the Chesapeake Bay on the south, in Anne Arundel county. On September 18, 1909, he and his wife conveyed all of that tract except 343/4 acres to Bessie B. Wright by a deed which contained the following clause: "To have and to hold the ground and premises above described, with the improvements thereon, and all and singular the rights, appurtenances, easements, and advantages thereto belonging or in anywise appertaining, unto the said Bessie B. Wright, her heirs and assigns forever in fee simple, subject however to the right of way over said land from the thirty-four and three-quarter acres tract reserved by the said William P. Hall, as now run to the northwest corner of the whole tract hereby conveyed. It being understood however that nothing herein shall be taken or deemed as a dedication of said right of way to the public, the ground in said right of way being expressly conveyed to the grantee herein and not reserved by the grantor; with the express understanding however, that should the said grantee her heirs or assigns, at any time in the development of the property hereby granted desire to change the location of said right of way she or they shall have the right to so change the location of said right of way, provided however that the change will not materially lengthen the distance across said tract, and shall not be contracted in its present width, and shall be of substantially the same grade as the right of way as now run, and provided further that any change in locating said right of way must be approved by the said Hall."
In 1922 Mrs. Wright and her husband conveyed the property so acquired to the Ellsworth Apartments, Incorporated, and J. E. Stansbury, Incorporated, and they on June 23, 1923, conveyed a part thereof known as lots Nos. 1 and 2 to Alvin Greif. Of that tract lot No. 1 was bounded for its entire length on the east by the 34 3/4; — acre tract reserved by Hall, and on the south by the waters of White Hall creek, also referred to as the Chesapeake Bay and White Hall river. Along the western boundary line of the 34 3/4 — acre tract there is now, and for some years has been, a high hedge having an opening on the lawn in front of what was formerly Hall's dwelling.
In 1913 Hall sold the 34 3/4 — acre tract to Eldridge E. Jordan, and he in 1918 conveyed it to William H. Teas, the present owner and the appellee in this case.
As we have noted, the grant to Bessie B. Wright was subject to "the right of way over said land from the thirty four and three-quarter acres reserved by the said William P. Hall as now run to the northwest corner of the whole tract." Technically there was no "right of way * * * as now run" when Hall conveyed the land to Mrs. Wright, because he held and conveyed to her the fee-simple title; but there is in the record evidence that there was a definitely marked and defined roadway over Mrs. Wright's land and running along the dividing line between it and the land reserved by Hall to the waters of White Hall creek, which road was used in connection with the whole tract known as "Grammers Pleasant Plains," and the reference to the "right of way" in the Wright deed was evidently intended to refer to that road. But shortly after Mrs. Wright took title to the land described in the deed to her, a dispute arose between her and Hall as to the precise meaning of the "right of way" clause in her deed, which eventually culminated in an equity proceeding in the circuit court for Anne Arundel county, in which Hall filed a bill of complaint against Mrs. Wright and others, praying that they be enjoined from obstructing the "said right of way," referring to the right of way mentioned in the deed to Mrs. Wright. The complainant in that bill, after the necessary formal allegations as to title, alleged that, at the time he conveyed the property described in the deed to Mrs. Wright, he had constructed, and with his family occupied, a dwelling at the extreme southeast end of the whole tract, and that he had also constructed "a roadway from his aforesaid dwelling through the tract of land to the Public Road leading to Annapolis and Baltimore, said roadway was graded and rounded up for its entire length twenty feet in width and guttered on both sides, and was so used and maintained by the Plaintiff as long as he owned the entire tract, that he had no gates or other obstructions of any kind thereon, and suffered or permitted none to be placed thereon in its entire length, deeming such free use of the road necessary for the reasonable and comfortable enjoyment of his residence and property, and that he continued in the use and enjoyment thereof as he had so constructed and used same until about the month of September Nineteen hundred and eleven," the date of the deed to Mrs. Wright. Referring to that portion of the whole tract which he had sold to Mrs. Wright, he further alleged that "the portion so conveyed to said Bessie B. *Page 233 
Wright embracing with the exception of a short piece the entire road leading from his said dwelling and that portion of the tract of land retained by him to the aforesaid Public Road; the portion of said tract so as aforesaid conveyed to said Bessie B. Wright by the terms of the deed to her being expressly subject to the right of way over same from the portion of the whole tract retained by the Plaintiff, as existing at the time of said conveyance, to the North West corner of the tract conveyed thereby," and that "the Plaintiff further shows that the aforesaid right of way is absolutely necessary to the beneficial use and enjoyment of his aforesaid property, that he has no other means of egress from or ingress to his property to and from the Public Road." He then alleged that he constantly used the right of way as a means of ingress and egress to and from his property, and charged that "the said Bessie B. Wright, William S. Wright and Joseph S. Zindorf have deprived the plaintiff, his family, friends, guests, and business acquaintances of the reasonable use of said right of way as reserved in the aforesaid deed to the said Bessie B. Wright, considering the character and situation of his property and the manner in which it is occupied, and the intent of the parties as to the mode in which the right of way was to be used, by plowing up a portion of same and planting crops thereon, by dumping refuse and filth from the land bordering on said right of way, by planting posts therein and thereon, by erecting gates thereon, not at the termini of said right of way, but in the path thereof and serving no purpose but the obstruction of said right of way and the annoyance and vexation of the plaintiff and his manifest injury and damage."
It appears from those statements that the specific matter of which Hall complained was that the defendants obstructed so much of the right of way as he was accustomed to use in going to and from his dwelling, to and from the public road, but the bill contains nothing which indicates precisely where that part was located. But referring to that complaint, the defendants in their answer charged that "the said Hall has no occasion whatever to pass through the said gates, and that according to the reservation in his deed his right to use the road leading from the public road through the farm of the defendant Bessie B. Wright extends only to his property and not to his dwelling house, and that, therefore, he could without the slightest inconvenience to himself or injury to his property, enter upon his own land at the point marked K upon said plat and reach his said dwelling house and all of his property without any occasion whatever to use that portion of the road beyond the point marked K upon said plat upon which are erected the two gates at the point marked A and B." When that statement is considered in connection with the allegations of the bill of complaint, it sufficiently appears that Hall's contention was that he was entitled to enter the right of way at any convenient point which would afford him convenient access from his property to the public road, while that of Mrs. Wright was that he had no right to use any part of the way which lay south of a westerly extension of the northern boundary of his property. That is to say, his contention apparently was that he was entitled to the use of the way at least throughout so much of its extent as would afford him convenient access to his dwelling, while that of Mrs. Wright was that he was only entitled to use so much of it as would afford him access to his whole property. In determining that issue, the circuit court for Anne Arundel county was necessarily required to inquire into and determine (1) the existence of the way, (2) its location, and (3) its extent. It is true that in that proceeding Hall did not directly complain of any interference with his right to use the way between the point at which he entered it in reaching his dwelling and White Hall creek, and that the gravamen of his complaint was that the defendant obstructed that part of it which lay between that point and the public road. But in his prayer for relief he asked that the defendants be enjoined from "erecting or maintaining any posts, fences, or other obstructions upon the said right of way, and from erecting or maintaining any gates upon the said right of way except at the termini of said right of way. * * * and from changing the location or grade of said right of way, and from in anywise obstructing the free use of the said right of way by the Plaintiff, his family, servants and agents and all persons having occasion to use the same as a means of ingress to and egress from the property of the said Plaintiff, and from in any manner interfering with the free and proper use of the aforesaid right of way of the plaintiff so as aforesaid reserved by him."
Upon those pleadings the trial court in that case felt called upon to deal, not only with plaintiff's right to use a part of the road as it was "run" at the time Hall conveyed the property over which it ran to Mrs. Wright, but with his right to use the entire road. For in its opinion it said:
"It is averred in the answer, and it was urged by Counsel for the defendants at the hearing, that `according to the reservation in his deed his right to use the road leading from the public road through the farm of the defendant Bessie B. Wright extends only to his property and not to his dwelling, and that therefore, he could without the slightest inconvenience to himself or injury to his property, enter upon his own land at the point marked K upon said plat and reach his said dwelling house and all of his property without any occasion whatever to use that portion of the road beyond the point marked K upon said plot upon which are erected the two gates at the points marked A and B.'
"If this were a way of necessity the contention would be good, but the road here *Page 234 
claimed is under a reservation of a grant and the nature and extent of this right must be by the terms of the reservation itself. If Mr. Hall reserved the whole road, then there is no more sound legal reason why he should be deprived of the full benefit and enjoyment of a part of it, than there is to deprive him of a portion of the land reserved. * * *
"I am of opinion that the plaintiff is entitled to the free and unobstructed use of the whole road, Frank v. Benesch, 74 Md. 58,21 A. 550, 28 Am. St. Rep. 237, that the bill presents a case that warrants the interposition of this Court by injunction, Shipley v. Ritter,7 Md. 413, 61 Am. Dec. 371, Shipley v. Caples, 17 Md. 183, and that the motion to dissolve the injunction heretofore granted should be overruled."
After the Ellsworth Apartments, Incorporated, and J. E. Stansbury, Incorporated, acquired the property described in the deed from Mrs. Wright to them, they had it laid off in blocks and lots, as shown on a certain plat annexed to the deed to Greif. From that plat, and from the description in the deed to Greif, it appears that the fourth or closing line of lot No. 1 binds for 675 feet on the first or west line of the 34¾-acre tract reserved by Hall out of the tract granted to Mrs. Wright, and includes the site of the roadway in dispute in this case which binds on that line and runs over that lot.
After Mr. Greif took title to lots Nos. 1 and 2, he "constructed" a roadway over what appellee claims was the bed of the old roadway from the intersection of the northern line of lot No. 1 with the western line of the 34¾-acre tract now owned by Teas, southerly along that line over lot No. 1 to the waters of White Hall creek, and placed at the beginning or the north end of that road a gate, through which one entering the road from the Teas property at any point south of the gate would be obliged to pass to reach a public road. Upon the completion of that road, Teas, his friends, servants, and agents, asserted and exercised an alleged right to use it throughout its extent in connection with and as appurtenant to Teas' property.
Thereupon Mr. Greif, the appellant, filed in the circuit court of Anne Arundel county a bill of complaint against Mr. Teas, in which he prayed that the defendant be enjoined "from driving over the private road of the plaintiff extending from his gate at the end of the right of way hereinbefore mentioned and reserved for the said William P. Hall and his assigns, along the division line between the properties of the plaintiff and defendant to the water's edge." The basis of his complaint was his contention that Teas had no right of way and that his predecessor in title had never claimed one over lot No. 1, but that the only way he had was one from his dwelling to the right of way to the public road, where such right of way intersected the northern line of lot No. 1. But in his amended bill, after referring to the several mesne conveyances by means of which he and Teas acquired title to their respective properties, and to the reservation of the right of way described in the deed from Hall to Mrs. Wright, he alleged that "access from the public road to the property of the plaintiff and also to the property of the said William H. Teas is not over the right of way which was originally reserved by the said William P. Hall and wife when they granted and conveyed the property mentioned in these proceedings to the said Bessie B. Wright and which has passed by successive deeds to the subsequent owners of the property and was not always used by all the owners of the property until the acquisition of the said thirty four acre tract by the said William H. Teas, and the plaintiff shows that by the aforesaid plat, blue print of which is filed herewith marked `Plaintiff's Exhibit No. 6,' and which is a copy of the survey and plat as made by J. Spence Howard, Civil Engineer, in June, 1923, it is shown that the road or right of way leading from the public road over the whole tract of Pleasant Plains farm turns at the entrance to Lot One of the plaintiff to the east leading into the aforesaid thirty four acre tract of land formerly owned by the said William P. Hall, now the home of the said William H. Teas, and also turns to the west leading into the other Lots Nos. from three to ten respectively in the subdivision of that portion of Pleasant Plains farm laid out on the aforesaid plat. * * * That in the meantime the right of way originally reserved by Hall had been abandoned and was grown up in small bushes and a large tree entirely obstructing any passage over the same and the owners of the said thirty four acre tract, subsequent in title to said Hall, had used and have continued to use as a means of entrance to and exit from the said thirty-four acre tract the road shown on the plat marked `Plaintiff's Exhibit No. Six,' and filed with the Bill, leading from the house on said thirty four acre tract in a westerly direction to strike the main road which leads through the whole body of the property mentioned in these proceedings to the public road and which said road leading from said Hall house, as aforesaid, connects with part of a road laid out by said bodies corporate, purchasers of the said property, continuing in a westerly direction through various lots laid out by them, as a means of access to and exit from the same." And there is evidence which sufficiently identifies the southern part of the right of way thus referred to with that part of it which runs over lot No. 1 and which was described in the deed from Hall to Wright.
So though the plaintiff in the original bill asserted that neither Teas nor his predecessors in title ever had any right of way over lot No. 1, in his amended bill he asserted *Page 235 
that they had had such a way but had abandoned it, but in this court he combines both defenses, for in his brief he states: "The testimony of the appellant is offered to show the interpretation of that reservation by the party who made it, by abandoning that part of the road leading to the water which he had previously used, but never intended to reserve."
The defendant answered the amended bill as well as the original bill, and in his answer asserted in effect: (1) That under the reservation in the deed from Hall to Wright a part of the right of way described in that deed extended from the northern boundary of lot No. 1 over that lot along the western boundary of the Teas property southerly to White Hall creek, and that he was entitled to use that portion of it as appurtenant to his property; (2) that that right was established by the decree of the circuit court for Anne Arundel county in the case of William P. Hall v. Bessie B. Wright et al.; and (3) that no part of it had ever been abandoned.
Upon the filing of the original bill with its accompanying exhibits, the court directed an injunction to issue as prayed, but subsequently, after a hearing upon bill, answer, and evidence on a motion to dissolve that injunction, which hearing the parties agreed should be final, it dissolved the injunction and dismissed the bill. From that decree this appeal is taken.
[1] The principal and controlling question presented by the appeal is whether the right of William P. Hall to use that part of the right of way referred to in his deed to Mrs. Wright, which is the subject of this controversy, was in issue in the case of Hall v. Wright et al. If it was, the existence of the way as now located is res adjudicata, and cannot be questioned, by the parties to that suit or their privies. Black on Judgments (2d Ed.) § 518. From an examination of the bill in that case, it might be inferred that the relief sought only affected that part of the way which ran from Mr. Hall's dwelling to the public road, but it is susceptible of a broader construction. The key to the construction of the right of way clause in the deed to Mrs. Wright is in the word "from," as used in that clause. In the bill of complaint in Hall v. Wright, complainant describes the road which is the locus of the way in question as running "from" his dwelling through the tract of land to the public road. Later in the same paper he referred to the land conveyed as "embracing with the exception of a short piece the entire road leading from his said dwelling and that portion of the tract of land retained by him to the aforesaid public road." In the deed to Mrs. Wright the way is described as "a right of way over said land from the thirty four and three-quarters acre tract reserved by the said William P. Hall, as now run to the northwest corner of the whole tract." In the answer of Mrs. Wright, she alleged that the way ran from the northwest corner of his property to the northwest corner of the whole tract. So that it may be inferred from the pleadings that Hall's contention was that the way ran from any point on his property to the public road, while hers was that it ran only from that point on his property which was nearest to the public road, to that road. In other words, her contention was that "from" was exclusive, and his was that it was inclusive, and that was one of the issues submitted to the circuit court for Anne Arundel county in the case of Hall v. Wright. We say that because, while Hall in his bill did not allege that the road which he built ran from the water, he does say that it ran from his dwelling, and his contention therefore, while inconsistent with that of Mrs. Wright, who claimed that it did not run from his dwelling, is consistent with a claim that it did run from the water, because he alleged that it ran "from" his said dwelling "and" that portion of the tract retained by him. If it ran from any point of that land, it must have run to the water, because his land ran to the water, so that in that case there were two issues — one of fact, the location of the road as then run, and one of law, what part of it Hall was entitled to use under the reservation in his deed to Mrs. Wright. In deciding whether Hall was entitled to the use of that part of the road which lay between his dwelling and the northwest corner of his land, the court was obliged to consider and construe the meaning of the words, "the right of way over said land from the thirty four and three quarter acres tract reserved by the said William P. Hall as now run," as used in the deed to Mrs. Wright, and in construing them to determine whether "from," as used in that clause, was intended to include or exclude the Hall tract. And in so far as the decree in that case decided those questions it binds and concludes all parties to this appeal. Freeman on Judgments, § 643; Tifel v. Jenkins, 95 Md. 665, 53 A. 429.
[2, 3] It therefore becomes necessary to determine just what the court did decide by its decree in that case, and in the absence of any words in the decree itself limiting its application, it must be assumed that it dealt only with issues raised by the pleadings, Beach, Eq. Practice, § 790, and it is well settled that its scope or effect could not be expanded by any expression found in the opinion which preceded it, Martin v. Evans, 85 Md. 13 et seq., 36 A. 258, 36 L.R.A. 218,60 Am. St. Rep. 292; Miller's Equity Proc. § 262; State, etc., v. Ramsburg,43 Md. 333; Cornell v. McCann, 48 Md. 592, although if the language of the decree is equivocal or obscure resort may be had to the opinion for aid in its interpretation, Miller's Eq. Proc. § 261. The decree in that case did nothing more than overrule the motion to dissolve *Page 236 
the injunction, but in doing that it necessarily determined in favor of the complainant all issues, whether of law or fact, upon which his right to the injunction rested. It therefore determined: (1) The true location of the right of way described in the deed from Hall to Mrs. Wright, and (2) what was meant by the phrase "the right of way over said land from the thirty four and three quarter acres tract," as used in that deed.
It decided therefore that "from," as used in that phrase, was inclusive, and meant from any point within the 34¾-acre tract to any part of the right of way, because the obstructions of which the plaintiff complained were located on that part of the way which lay south of and beyond the point at which the defendant contended it ended, and it overruled defendants' contention that the way ran only "from" the plaintiff's property and not "from" his dwelling.
In respect to the location of the way in that case, the situation is obscure. The pleadings were vague, the evidence has been lost, and the only intelligible description of it is found in the court's opinion, which refers to it as running to White Hall creek and bounding on Hall's land. But in view of the fact that the parties to that proceeding accepted that expression as a correct description of the way from the plaintiff's dwelling to the public road, it should be regarded as controlling in this case: First, because that location is not inconsistent with the allegations in the pleadings; and, second, because it corresponds with the way identified by the witnesses in this case as the one on which the obstructions of which Hall complained were placed and which in obedience to the decree the defendants removed.
[4] The only remaining question, therefore, in respect to that issue, is whether the way extended southerly from the Teas dwelling to White Hall creek. We do not regard that question as concluded by the decree in Hall v. Wright, further than this: That if that part of the way was in existence and was a part of the way referred to in the deed from Hall to Mrs. Wright, then the right of the defendant in this case to use it was finally settled in that case. But that case did not necessarily in our opinion decide that that part of the way was in existence when it was decided. It is true that in the opinion the court in that case said that the road did run to the waters of White Hall creek, but the opinion was no part of the decree, Miller's Eq. Proc. § 260, and the decree itself could only decide issues tendered by the pleadings. Id. § 262. And so far as we have been able to discover, there is nothing in the pleadings in that case to indicate that at that time and in that proceeding Hall claimed that the way extended from his dwelling to White Hall creek; but, on the contrary, what he does say would tend to exclude the hypothesis that the existence of that part of the way was in issue in that case. So that in this case we approach it as an original question, to be determined solely by the evidence in this record. But in dealing with it, it must be remembered that, the question is where the road referred to in the deed from Hall to Mrs. Wright was located at the time that deed was executed, and not what part of it Hall or his privies in title were and are entitled to use, for that question was finally settled in Hall v. Wright by the circuit court for Anne Arundel county.
Alvin Greif, the appellant, does not deny that that part of the way once existed, but contends that it has been abandoned, as will appear from this extract from his testimony:
"In your Original Bill of Complaint which you undoubtedly read or had read to you to which you swore, the case of Hall v. Wright is specifically referred to and invoked as a part of your case? A. Yes.
"And I understand now you abandon that position and claim the right of way did exist but it has been abandoned, is that your contention now? A. Yes, far as I know."
He apparently had no actual knowledge of it at the time Mrs. Wright bought the property, a part of which he now owns; but in describing its present appearance he said that it was bordered on one side by a hedge between the Teas property and his own, that there was an opening 30 feet wide in that hedge, and that a double row of catalpa trees ran from that opening to the Teas dwelling.
George S. Kemp placed that opening about 300 feet nearer the water than the entrance to lot No. 1. He, too, had apparently only known the property since Mr. Greif became interested in it; but in describing its condition at that time he said that the ground on which Mr. Greif constructed the roadway from the entrance of lot No. 1 to the water, which appellee contends is the site of the old road, was overgrown with bushes and trees, and that on that part of it which lay between the opening in the hedge and the water there was a large walnut stump.
Samuel Colbert, who had known the property for a long time, said that Hall had used the right of way from the opening in his hedge to the public road, but that he did not know that the road ran to the water. He further said that it was overgrown with underbrush and small trees, and he placed the walnut stump as being about 20 or 30 feet from the hedge. There was other evidence tending to corroborate this testimony, but no witness offered by the plaintiff went so far as to say that at the time Hall sold his property to Mrs. Wright, the roadway did not run to the water, and indeed, with the exception of Colbert, no one of plaintiff's witnesses appears to have known the property at *Page 237 
all at that time, and he only said that he had never heard that the road ran to the water.
On the other hand, Mrs. Amy D. Hall, widow of William P. Hall, said that when the deed to Mrs. Wright was made there was a roadway 20 feet wide run and established from the northwest corner of the 34 3/4; — acre tract along the western boundary of that tract to the water, and that it was the way referred to in that deed; that she and her family used the roadway very often; that they drove over it to the water, and hauled sand and vegetables over it.
Mrs. Margaret Hall Mebane, Jr., referring to the location and use of the road, said:
"Where was it? A. From the Bay Shore to the Northwest corner of the whole property as I understood it. Father reserved a right of way through the Wright property, it ran then from the waters edge all the way to the Northwest corner of the entire tract.
"The entire original Pettibone tract? A. That has always been my understanding.
"Was this right of way definitely located on the ground? A. Yes sir; Father had that road run all the way across from the Northwest corner of the entire tract to the water.
"Was it established and run at the time of the transfer in 1909 to Wright? A. It was.
"How was it defined on the ground? A. It was rounded up same as county roads were at that time.
"Did you yourself actually use that roadway at that time? A. Yes, sir.
"How frequently? A. Every day in a pony cart.
"To what extent? To what extent did your user go? We used to drive for the mail, and we had to exercise the pony every day, and we were not allowed to go off the property, I would have to drive over that road to exercise the pony, usually in the course of the afternoon we would drive over all the roads of the property, and frequently to the waters edge, we were not allowed to go off the property.
"Then you used it frequently? A. Yes, sir."
Eldridge E. Jordan, who bought the property now owned by Teas from Hall in 1913 and sold it to Teas in 1918, in speaking of the right of way referred to in Mrs. Mebane's testimony, said:
That it was "well defined by a combed road such as usually had and been at all times to my uses, I used it along parallel with the property to the river frequently.
"Used it all the way along the hedge to the river? A. Yes, sir; whenever I cared to use it down to the bluff, to the river, no barriers or interruptions of any kind, no efforts to stop me, I assumed we had a right and we used it, and it was my understanding at the time we purchased it, and there were no interferences with the use of it during the time I occupied it."
Joseph G. Zindorf, a defendant in the suit of Hall v. Wright et al., said that he lived on the property as an employé of Mrs. Wright from 1909 to 1918; that at the time that suit was instituted the roadway was marked out and defined and had been scraped and had a gutter; that it ran along the entire western boundary of the Teas property to the water, and had been so located as long as he knew of it. And on his redirect examination he. added this:
"It might interest you to know that Mr. Hall had an object in that right of way to the waters edge. At this time when this hedge was put in the hedge was not put straight to the waters edge but ran to the point a little beyond the tree top, and then turned to the southeast leaving a corner in there on which grew some cedar trees, and these he spoke of as some day making a park, that may have been his object in having the roadway.
"What other way could he have gotten down there? A. No way except by coming down around the shore or through this road way.
"You mean to say he could not have gotten to it through his own lot? A. Crawled through the hedge or cut the hedge out.
"This 20 foot road way was the only road laid out to reach the point you refer to? A. Yes."
The testimony of these witnesses was corroborated by that of Edward Carr, who had known the property for many years, Frank M. Duvall, who had done the actual construction work on the road in 1908 or 1909, and William S. Wright, the husband of Mrs. Bessie B. Wright, and a defendant in the case of Hall v. Wright.
From this testimony the conclusion is inevitable that the way or road referred to in the deed from William P. Hall to Bessie B. Wright dated September 18, 1909, ran along the entire western boundary of the 34¾-acre tract from the northwest corner of that tract to the waters of White Hall creek or the Chesapeake Bay, as those waters are variously spoken of. And since, for reasons already given, the reservation of the right of way in that deed referred to the entire right of way, it followed that Hall and his privies in title were entitled to use it throughout its extent, until in some appropriate and sufficient manner they divested themselves of that right.
And that brings us to the second contention of the appellant — that the appellee's right was abandoned.
[5, 6] The right of Hall and his privies in title to use the way constituted an easement appurtenant to the property reserved by him out of the property granted to Mrs. Wright, Knotts v. Summit Park Co.,146 Md. 239, 240, 126 A. 280, 282, and was acquired by grant. Such a right could not be lost by mere nonuser, even though continued beyond the prescriptive period of 20 years, unless accompanied *Page 238 
by circumstances clearly indicating an intention to abandon it. Knotts v. Summit Park Co., supra. That rule is very clearly stated by Judge Adkins for this court in the case last cited, where he said:
"But where a right of way is acquired by grant, as in this case, it cannot be lost by mere non-user, for however long a time, unless such non-user is accompanied by some act indicating clearly and unequivocably an intention of the grantee to abandon it. 19 Corpus Juris, p. 942; 9 R. C. L. p. 810; 22 L.R.A. (N.S.) p. 881, notes.
"It is well settled, however, that a party entitled to a right of way or other mere easement in the land of another may abandon and extinguish such right by acts in pais. The act or acts relied on, however, to effect such result, must be of a decisive character, and whether the act amounts to an abandonment or not depends upon the intention with which it was done. A cessor of the use, coupled with any act clearly indicative of an intention to abandon the right, would have the same effect as an express release of the easement, without any reference whatever to time. Vogler v. Geiss, 51 Md. 407; Stewart v. May,119 Md. 10 [85 A. 957]."
And Judge Pattison, in the opinion filed in Baugh v. Arnold,123 Md. 7, 91 A. 152, states the rule in this language: "The law as established in this State, Canton Co. v. Baltimore City, 106 Md. 69 [66 A. 679,67 A. 274, 11 L.R.A. (N.S.) 129], and elsewhere is, that the mere non-user of an easement even for more than twenty years will not afford a conclusive evidence of abandonment, but such non-user for a prescriptive period united with an adverse use of the servient estate inconsistent with the existence of the easement will extinguish it. Washburn on Easements, sections 551-2; 14 Cyc. 1195; 10 A. E. Ency. of Law, 436; Woodruff v. Paddock, 130 N. Y. 618 [29 N. E. 1021]; Matter of New York, etc., 73 N. Y. App. Div. 394 [77 N. Y. S. 31]; Smyles v. Hastings, 22 N. Y. 224; Smith v. Langewald, 140 Mass. 205 [4 N. E. 571]; Spackman v. Steidel, 88 Pa. St. 453; Horner v. Stillwell,35 N. J. L. 307; Bentley v. Root, 19 R. I. 205 [32 A. 918]; McKinney v. Lanning, 139 Ind. 170 [38 N. E. 601]; Lathrop v. Elsner, 93 Mich. 599 [53 N. W. 791]; Louisville N. R. R. Co. v. Quinn, 94 Ky. 310 [22 S. W. 221]."
And Prof. Tiffany, in his work on Real Property, after an exhaustive examination of the cases, states the rule as follows: "Nonuser in itself does not terminate an easement acquired by grant, and, as above stated, it is at most merely one of the facts from which an abandonment may be inferred. The fact that the nonuser continues for the prescriptive period is immaterial, in the absence of any adverse acts on the part of the owner of the land." Tiffany on Real Property, par. 377, p. 1379.
Applying those principles to the facts of this case, the question of abandonment is free of difficulty. The testimony as to the user of the way from the northwest corner of the Teas property to the water is conflicting. Witnesses for the defendant testified that it was frequently used by members of his family, employes, and visitors, while witnesses for the plaintiff testified to a condition of the way which was inconsistent with such use. But resolving that conflict in favor of the appellant would avail him nothing, because there is literally nothing in the record, except the evidence as to nonuser, which could permit the inference that the defendant or his privies in title intended to abandon their right to use any part of the way. And since mere nonuser, without an intention to abandon, could not amount to an abandonment, it follows that in our opinion the defendant has not lost his right to use any and every part of the way, 20 feet wide running along the western boundary of appellee's land from the northwest corner thereof to the waters of White Hall creek.
The decree of the trial court dissolving the injunction and dismissing the bill of complaint will therefore be affirmed.
 Decree affirmed, with costs.