ELIZABETH M. REEVES, PLAINTIFF, v. THE CITY OF JERSEY CITY, ET ALS., DEFENDANTS.

Hudson County Court
Law Division

Decided April 9, 1953.

442

*Mr. Louis G. Morten*, attorney for plaintiff.

*Mr. John B. Graf*, attorney for defendants (*Mr. Louis E. Saunders*, of counsel).

Drewen, J. C. C. Plaintiff claims to be the widow of the late Edward C. Reeves, who in his lifetime had been a member of the Jersey City Police Department; and as such widow she sues for the payment of pension benefits by the defendant Fund. The case is here again after a reversal by the Appellate Division. The appeal was taken from the decision by this court upon a separate trial of the legal issues raised by the pleadings, pursuant to *Rules* 3:42–2, 3:30–2 (now 3:16–17) and 5:2–1. These issues are embodied in the respective defenses of *res judicata* predicated upon (a) a suit in the Second District Court of Jersey City, (b) the dismissal of a bill in Chancery, and (c) determination of a suit brought by plaintiff in the former New Jersey Supreme Court, Hudson Circuit.

For a better understanding of much of what follows it must be explained that the reversal turned on a misapprehension in the Appellate Division of what this court had had before it in the way of an agreed factual basis for its decision; and that as a consequence the reversal, in this court's view, requires correction in nothing that has already been decided, the present opinion being rendered on matter supplemental to that of the former decision.

The dismissal of the Chancery bill and the striking of the complaint in the law action were held by this court to be not *res judicata*. Respecting the district court action, the record of judgment there is absolute in form, notwithstanding which it has been plaintiff's contention throughout that it is grounded, not on a meritorious determination of the issues, but on a decision by the district court that it was without jurisdiction. Because of that contention this court ruled that decision upon the legal issues, so far as the district court judgment was concerned, be stayed to "enable plaintiff to institute the appropriate proceeding" in that court for the ascertainment and pronouncement of the true ground and character of the judgment. The opinion of this court, setting forth *in extenso* the reasons for its decision, is reported in *Reeves v. City of Jersey City*, 16 *N. J. Super.* 231 (*Cty. Ct.* 1951).

Plaintiff promptly inaugurated proceedings in the district court pursuant to the leave given. Testimony was taken at length, including that of the former district court judge by whom the questioned judgment had been rendered. The petition to have the district court judgment declared a judgment upon jurisdiction only was denied "in its entirety"; and a memorandum of opinion was filed by that court. (*Trans., Jan. 27, pp. 28–30*). In view of such determination, this court, on May 26, 1952, made an order that the aforementioned record of judgment of the district court "be adjudged a legal bar to the present action." On the day following, plaintiff applied to this court for the reopening of the separate trial of the legal issues, "with leave to take proofs," (presumably the same proofs that already had been taken in the district court with the result stated). This application was denied. It was specifically from the last-mentioned orders, for judgment and for denial of the application to reopen, that the appeal was taken. The opinion of the Appellate Division is reported in 22 *N. J. Super.* 351 (1952).

Now, as to the subject matter of the misapprehension referred to, let it first be noted that the material upon which this court had based its former decision, pertinent to the dismissal of the bill in equity, the striking of the complaint at law and the matter of the judgment in the district court, had been personally and jointly submitted by counsel for the parties in open court; and that such material had included all requisite data pertinent to the decision for which this court had been asked. Moreover, after this court's opinion had been rendered, its attention was in nowise directed by plaintiff's counsel to anything therein contained; there was no application for reargument, and plaintiff promptly moved in the district court, as already stated, pursuant to the leave given. Nor, after the petition to the district court had been denied, was there any representation to this court with respect to any want of proof before it or otherwise, not even upon the occasion of this court's denial of plaintiff's application to reopen the trial of the legal issues. Counsel for plaintiff

makes no claim that any proof had been submitted by him upon the separate trial for which he had moved, that is proof independent of the proof already mentioned. And unless, therefore, he had participated in or assented to the latter proof, the action taken on plaintiff's behalf in keeping with the opinion this court had rendered is totally inexplicable. Notwithstanding all this, it appears unquestionably from the opinion of the Appellate Division that the reviewing court had been given to understand that this court had been without adequate evidence of the district court judgment, or indeed without any evidence at all, to say nothing of the same lack with respect to the other judicial records as well. In its opinion the Appellate Division states (*p.* 356):

"We have difficulty in understanding how the County Court could find that the district court judgment was *res adjudicata* to plaintiff's suit. It does not appear that the judgment record was ever before the County Court. There is no stipulation to such effect and *counsel for the appellant has represented to this court that the judgment or the facts recited in the County Court's conclusion of the various steps alleged to have been taken by the plaintiff in the Court of Chancery or the Supreme Court were never, in fact, before the County Court.* It must be remembered that the presiding judge of the Hudson County (District) Court could not determine on what grounds judgment had been entered in September, 1941 with the benefit of the record and the testimony of the judge who presided at the trial in 1941. How then could the County Court without the record determine that the matter was *res adjudicata*?" (Italics supplied.)

Counsel for plaintiff would vindicate his position by showing that a charge made in his appellate brief that proofs were wanting went undenied in the brief of defendants. Assuming this to be true, it can have but the single effect of pointing to an egregious neglect of defendants' cause on appeal. It cannot abate this court's knowledge of what occurred in its presence, nor of the material with which it worked.

 Returning to the quoted passage, this court had determined that the district court judgment was *res judicala*, after the refusal of that court to alter its record, for the reason that the judgment is absolute on its face, and for the

further reason that the decisions appear to put it beyond question that such a record must be deemed final. It is to be borne in mind also that the only question raised respecting the disputed judgment is that already stated. Identities of party and subject matter are not involved. Furthermore, it cannot be questioned, I think, that the doubt which plaintiff's contention would cast upon the district court judgment can be resolved only by the district court itself. These factors in the problem were not dealt with at greater length in the former opinion of this court for the reason that their relation to the immediate question was modified by the contingency involved in the proceedings plaintiff had been given leave to take. In that circumstance it was deemed sufficient for this court to say, as it did, "Ordinarily, of course, the judgment would import a disposition on the merits * * *." (*Ibid., p.* 238). And again, "The subject is not one that can be dealt with collaterally * * *. The only course available to plaintiff is a direct proceeding in the district court." (*Ibid., p.* 241). I believe that the view thus expressed on the import of the district court judgment as it stands is amply sustained by the authorities hereinafter cited.

The procedure had upon the return of the case to the County Court included a number of indeterminate features, such as argument on plaintiff's demand for admissions (*Trans., Jan.* 16, *pp.* 5–29), and defendants' motion to strike interrogatories (*Trans., Jan.* 16, *p.* 30 *et seq.*). All of this, however, was superseded by a new motion, this time the motion of defendants as well as of plaintiff, for a separate trial of the law issues (*Trans., Dec.* 5, *pp.* 2–21; *Jan.* 23, *p.* 13 *et seq.*; *Jan.* 27, *pp.* 2–9). Defendants moved in addition for a judgment on the pleadings. But it is with the separate trial of the law issues that the present opinion deals. All that occurred in this court following the reversal, including the arguments and statements of counsel, was by direction of the court reported in full and certified transcripts thereof filed in the clerk's office. The references to these transcripts herein shown are made under their several dates.

For proof upon the retrial of the law issues, original documents were placed in evidence upon the testimony of a representative of the Clerk of the Superior Court, covering the Chancery records and those of the former Supreme Court. Records of the district court were placed in evidence upon the testimony of the county district court clerk. With relation to the Chancery and Supreme Court records, what is before the court now differs not at all in substance from what was here at the time of the first opinion, and the court sees no reason for altering its earlier decision with respect to them. (See 16 *N. J. Super.* 231, at 234–6). The results in the Court of Chancery and in the Supreme Court are each, therefore, adjudged to be not *res judicata* to the same extent and for the same reasons as set forth in the earlier opinion.

This brings us to the district court judgment. Does that judgment record a disposition upon an adjudged lack of jurisdiction, or does it record a decision on the merits? This whole question is brought into sharp focus by the county district court's aforementioned refusal to alter the record; and it may well be that what is said here on the subject now should have been said in a supplemental opinion following that result. At any rate, what this court had before it in the first trial of the issues was a certified transcript of the district court judgment, quoted in the opinion. In the evidence now produced the judgment is shown as recorded on a single sheet, obviously part of a looseleaf system. The sheet is designed as a printed form, with blanks to be filled in. It is adaptable for use in about all the foreseeable circumstances of district court litigation, from summons to final execution, its adaptibility being effectuated in given instances by the filling in of certain blanks and the leaving of others vacant. Of the trial *sub judice* and its result, omitting the inapplicable portion of the form printing, it is there recorded that "This cause was called for trial at 10 o'clock in the forenoon and continued by adjournment until September 25, 1941"; that "the plaintiff appeared and the defendant did appear and the trial of the cause was proceeded

with as follows: On the part of the plaintiff Elizabeth Reeves was sworn and testified. On the part of defendant Frank A. VanWinkle and Jean Reeves; * * *. Whereupon it is on this 25th day of September, 1941 by this Court considered and adjudged that said *Elizabeth M. Reeves* plaintiff recover against said *Firemen's and Policemen's Pension Fund Commission* defendant the sum of *judgment for defendant* * * *." The italics in the final statement of adjudication are here supplied so as to distinguish what is thus presented from the remainder. The words in italics are written upon the record in ink within the blanks provided, the rest is part of the printed form.

It is first to be observed that the legal effect of this record cannot be determined by considerations of merely clerical care for neatness or the more precise adaptation of the printed form. Not even plaintiff contends that what we have here is anything but a judgment for defendant. It is certainly not a dismissal for want of jurisdiction. The only objection plaintiff makes is one that goes to the subject matter of the record's underlying decision. As a judgment for defendant the record is in every way unqualified, so that it becomes entirely plausible to regard it as a judgment on the merits and final in character, and entirely implausible to regard it as one based on some nondeterminative question unrelated to the merits, like that of jurisdiction.

For about 12 years, that is from the very beginning, this record of judgment in the district court has remained in its present form, free from any effort to alter, supplement or explain it in any way; and no appeal was ever taken from the result that it records. Moreover, when the opportunity earlier in this case was given, as already stated, for a probing of its final or non-final character, no proper step was taken to review the district court's refusal to alter the record as plaintiff had petitioned it to do.

The cases appear to afford the clearest authority for holding the record in its present form to be a final judgment.

An early decision that expresses a stern view of the integrity of judgments against collateral attack is *Vandyke v. Bastedo,*

15 *N. J. L.* 224 (*Sup. Ct.* 1836). At *page* 229, Hornblower, C. J., said:

"To another of the transcripts offered in evidence, the defendant objected on the ground, that it did not appear, either that there had been a trial, or that the judgment had been rendered on confession. The judgment in this case, it appears, was rendered in the absence of the defendant, and without evidence. It is no doubt therefore an erroneous judgment, and might have been reversed, if a reversal had been sought in a proper manner, and at the instance of the defendant in the suit. But the Court of Common Pleas could not, nor can this Court, reject the record on that ground. The judgment is not a nullity, but a valid subsisting judgment, binding on the parties, until avoided by due course of law."

At *page* 231 of the same case (*Vandyke v. Bastedo, supra*), Ford, J., stated:

"The judgment, so long as it stands unreversed, of any court of competent jurisdiction, and the record of such judgment, are of such high veracity and authority, that neither their *truth* nor *justice* may be denied or questioned, when produced in evidence, in any other court, between other parties. Neither the Common Pleas nor this court, has power to inquire into the merits of a judgment rendered before a Justice, unless it be brought before them in a direct proceeding between the same parties, so that both of them may be legally in court to be heard. The record must be received as verity, unless it can be shown to be void for want of jurisdiction in the court that rendered it, or for fraud."

It is important to note at this point that the district court in 1941 did have jurisdiction to determine the question before it. (See authorities cited in this court's opinion, 16 *N. J. Super.* 231, at 238.) And we may not, in the absence of clear and definite proof adduced in a direct proceeding, conclude that the district court was unaware of its own jurisdiction. It is also worthy of mention that there has been no charge in the present suit that fraud was committed in the entry of the district court judgment.

In *McMahon v. Amoroso*, 108 *N. J. Eq.* 263 (*E. & A.* 1931), the court said at *page* 267:

"While the record indicates that there were certain irregularities in the district court proceedings, which may have been held erroneous in a direct proceeding, we are unable to find anything in the case

which would render the judgment or the sheriff's conveyance void; and the court having had jurisdiction to render the judgment, and having rendered it, the law, when the judgment is collaterally attacked, will make all presumptions necessary to sustain it."

In *Lippincott v. Godfrey*, 103 *N. J. L.* 407 (*E. & A.* 1927), collateral attack was made upon the entry of a rule for judgment which recited, *inter alia,* "and the defendant having entered his appearance," this recital being contrary to the fact. The Court of Errors and Appeals said, at 409:

"Assuming all the irregularities indicated by counsel of appellant, existed, they did not deprive the court of jurisdiction of the subject matter of the controversy. The court had jurisdiction to order a judgment, and if its procedure in that regard was erroneous, nevertheless, the validity of the judgment could only be properly subject to an attack by a motion to vacate the judgment in the court where such judgment was entered, or by an appeal therefrom, and not in the collateral manner, as is attempted here."

Other significant cases are: *McDevitt v. Connell*, 71 *N. J. Eq.* 119 (*Ch.* 1906); *Lutes v. Alpaugh*, 23 *N. J. L.* 165 (*Sup. Ct.* 1851); *Plume v. Howard Savings Institution*, 46 *N. J. L.* 211, 229 (*Sup. Ct.* 1884); *Lloyd v. Richman*, 57 *N. J. L.* 385 (*Sup. Ct.* 1894); *Palmer v. Freeholders of Essex*, 77 *N. J. L.* 143 (*Sup. Ct.* 1908).

A case of special interest for the striking similarity of some of its features is *Martin v. Evans*, 85 *Md.* 8, 36 *A.* 258, 36 *L. R. A.* 218 (*Md. Ct. App.* 1897). There a collateral attack was made upon a final decretal order dismissing a bill in equity, defendants having pleaded the decretal order as *res adjudicata.* The decretal order did not show upon what ground the bill had been dismissed, and plaintiff contended it had been dismissed for want of jurisdiction in the court to grant the relief asked and not by way of a determination on the merits. Plaintiff sought aid in a portion of the opinion filed by the judge granting the order. In the opinion the meritorious issue was discussed, and resolved in favor of defendants. The judge, however, went on to say:

"I have thus, at the request of the solicitors in the case, gone into the merits, and would dismiss the bill without regard to technical

objections. But it seems to me to be perfectly clear that this proceeding could not be sustained at any rate, as, at best, it would be simply a conversion of the plaintiff's property by Reed, for which she had an ample remedy at law. If the bonds were hers, she could have recovered in the suit she had on the law side of this court, or she could have instituted an action of trover."

The Court of Appeals doubted that the opinion of the equity judge should be considered, and thought, if it were, that a decision on the merits would be indicated. The court then said. 36 A. at *page* 259:

"Even if the opinion may be looked to for the purpose of ascertaining whether the equity court considered that there was no adequate remedy at law, still there are no qualifying words in the decretal order warranting the inference that the merits were not finally adjudicated, or indicating that the dismissal was founded on purely technical grounds. Whenever a decree dismissing a bill in equity fails to restrict its own scope, the presumption, according to the great preponderance of decided cases, is that the issues raised by the proceedings have been disposed of on their merits, and they, therefore. become *res adjudicata*."

Accordingly the court held, 36 A. at *page* 260:

"Agreeing, as we do, with the Circuit Court, that the controversy involved in this case was fully and finally determined by the decree in the equity case between the same parties, we affirm its judgment * * *."

True. the above case deals with a prior equity decree. but there would seem to be no sound reason for invoking a different rule where a prior judgment at law is concerned. And all that the Maryland Court of Appeals says about the absence of "qualifying words" and about the absence of indication "that the dismissal was founded on purely technical grounds." and about the failure of the decree to "restrict its own scope," has the closest application in the present instance. It would certainly be presumptuous for this court to disregard the salutary and time-honored principles forbidding a collateral attack of the nature plaintiff presently demands.

Involved in this controversy are further specific propositions that call for attention. First, the district court file discloses no finding of fact; that is, it discloses no writing of that character. The judgment itself makes it of record that certain named witnesses did testify. From the absence of such a writing plaintiff draws the firm inference that there was no such finding, an utter *non sequitur*, likely as not, and contends that for this reason alone there could have been no final judgment. The tenor of the judgment record, however, is such as clearly to support, if not to compel, the inference that a finding was made. Among the things for which plaintiff petitioned the district court was that it make a finding of facts in the case. The court declined, and from this no appeal was taken. But plaintiff thereupon asked this court to make such a finding. This would be tantamount to the hearing of an appeal by trial *de novo* from the district court to the County Court, a procedure unknown to our law. If the making and preservation of such a finding were indispensable to a final judgment in the first instance, the omission thereof may not be now presumed, certainly not under all the circumstances here present. And the claim that the continuous availability of a separate record of finding is essential to the continuance of the judgment, unqualified as that judgment is and final as it purports to be, is a proposition too indeterminate and far-reaching to be approved. Similarly, and with better reason, a judgment would be annulled by the loss, for example, of a complaint from the court file. Did a writing or record of the kind now sought become mislaid or otherwise disappear in the long interval of years? The theory of plaintiff's contention would cause the judgment to depend, not upon the record, but upon precarious circumstance extrinsic thereto. In *Smith v. Cruse*, 101 N. J. L. 82 (*E. & A.* 1924), the court said, at *p.* 83:

"It is not necessary for a party to request the court, in cases where a jury is waived, to make specific findings of law or fact, or law and fact. It is sufficient if he claims judgment in his favor upon testimony adduced upon the trial. And the court, sitting without a jury, cannot enter judgment for either party without finding in favor of

that party. A judgment presupposes a finding of facts in favor of the successful party even if such finding be not expressed in terms, and also presupposes that, in the opinion of the judge, that party is entitled to the judgment by the law arising upon the facts."

In *Mangani v. Hydro*, 119 *N. J. L.* 71, 74 (*E. & A.* 1937) it was stated:

"Courts of general jurisdiction need not set forth in their records the facts upon which their right to adjudicate depends. These facts are presumed, and their judgments are not open to collateral attack on this ground."

In *Frayne v. Bahto*, 137 *N. J. L.* 109 (1948), the Supreme Court said, at *p.* 111:

"A judgment presupposes a finding of fact in favor of the successful party, even if such finding be not expressed in terms."

The old rule of court that plaintiff relies on contains no provision that the findings to be made in accordance with its direction shall be indispensable to the validity of final judgments entered. And the judicial pronouncements above set forth leave no doubt that our courts have had no contrary understanding of the rule's effect.

In the opinion of the Appellate Division (*Ibid.*, at *p.* 357) there is the following passage respecting the district court judgment:

"Here we have the defense of *res adjudicata* pleaded but no proof to sustain the defense. Assuming that the County Court did have the judgment record of the district court properly before it, the judgment record was such that the County Court could not determine whether the district court had rendered its judgment on the merits, or only on a ruling, that it had no jurisdiction. It must then necessarily follow that the County Court could come to no proper determination that the defense of *res adjudicata* was available to the defendant."

Plaintiff relies on this passage as dispositive of the question before us. (*Trans.*, *Jan.* 27, *p.* 67 *et seq.*). In the first place, the subject matter of the decision presently rendered on the district court judgment was not, as already explained,

before the Appellate Division on the previous appeal. The reference to "proof to sustain the defense" manifestly is to proof that goes to establish the identities essential to *res judicata*; and the only cases cited are such as bear on that point (*Henninger v. Heald*, 51 *N. J. Eq.* 74, 75 (*Ch.* 1893); *Hoffmeier v. Trost*, 83 *N. J. L.* 358, 359 (*Sup. Ct.* 1912); *Water Commissioners v. Cramer*, 61 *N. J. L.* 270 (*E. & A.* 1897)). It cannot be made too clear that in the present controversy identity of persons, parties and causes is not in dispute. No such issue has ever been raised, and from first to last it is implicitly assumed that the required identities are present, as indeed they are. The district court file now in evidence, moreover, completely demonstrates the truth of this. I refer particularly to the specification of defenses and to plaintiff's verified petition to the district court for alteration of the record.

Concerning the remainder of the passage above quoted, taking it at its face and assuming it to be more than *obiter dictum*, all that it purports to decide is that it was judicially impossible for this court to have determined the finality of the questioned judgment because of the want of extraneous evidence to show whether it was predicated upon the merits or upon mere want of jurisdiction, this notwithstanding the inherent tenor of the judgment record itself. And the court's conclusion that there was such evidential lack was entirely adequate to the appellate result. Admittedly the judgment was not before the upper court. Counsel for plaintiff says of the district court judgment "I did not take it up at all. I said it had no part in the case." (*Trans., Jan.* 16, *pp.* 24–5). There are two things to be said. One is, again, that the question was not before the Appellate Court and that the *dictum* is therefore *obiter*. See *Crescent Ring Company v. Travelers Indemnity Company*, 102 *N. J. L.* 85 (*E. & A.* 1925); *Jamouneau v. Division of Tax Appeals*, 2 *N. J.* 325, 332 (1949). And for a decision that presents a contrast to the situation before us, and exemplifies the requirements of *stare decisis*, see *United and Globe Rubber Company v. Conard*, 82 *N. J. L.* 680 (*E. & A.* 1911). It is also to be

noted that the only decisional effect imputable to the passage is directly contrary to what appears to be the controlling authority. (Cases *supra.*)

Next, the evidence adduced from the district court archives includes the specification of defenses filed in the action. There are 11 specifications in all, only one of which raises a nonmeritorious issue, the second, which avers that the court is without jurisdiction to pass upon the Florida decree. The implications of plaintiff's position here too are important. They are of a piece with those already considered in the previous connection. It is urged that because the specified defenses include a jurisdictional issue, and because no written record of factual finding is located, there can be no determination whether the judgment was upon the single jurisdictional question raised or upon one or more of the 10 meritorious ones; and since it thus cannot be determined that the record, final and absolute in form, is that of a final and absolute judgment, it follows that the record cannot be availed of to establish *res judicata.* So counsel contends, and from the uncertainty that he thus imputes to the situation he derives the "agnostic" theory of his case. (*Trans., Jan. 27, pp. 72–4*). In other words, the ambiguity is more evidential than the certainty; the ambiguity presented by the specified defenses must prevail over the certainty of the judgment, and in plaintiff's favor. This is argument by paradox: an arbitrarily positive conclusion for nullification of the record is made to proceed from an admittedly dubious premise. In addition to which, the argument is a direct inversion of every principle that is followed by what clearly appear to be the controlling cases. And very obviously it presents a broad threat to judgments generally.

It is significant, in this same connection, that in the memorandum filed by the district court judge in his denial of plaintiff's petition to reform the judgment, he finds "there was a number of defenses and evidence was presented as to at least two of the defenses." Of necessity then the evidence must have included proof upon at least one of the factual issues.

According to the same memorandum of the district court, the denial is grounded on the inability of the court, because of the inconclusive testimony of the witnesses "at this late date," to find a basis of fact upon which to grant the petition. If in spite of this consequence of long lapse of time the record must be declared to be other than what it manifestly is, and thus annulled, it would follow that time militates not to strengthen but to weaken judgments in their ostensible import.

I think the situation is truly summarized in the statement that the judgment record is not that of a dismissal for want of jurisdiction, but that of a judgment for defendant, rendered after the hearing of testimony and with nothing to "restrict its own scope"; that since the district court had judicially declined to reform or alter its record, without appeal from that ruling, the ruling stands; and we can determine the nature of the judgment record only by the record itself.

Defendant's motion for judgment on the pleadings is denied. On the separate trial of the law issues the district court judgment is adjudged to be *res judicata*.