## A. B. VEIRS, INC. *v.* WHALEN

[No. 103, September Term, 1969.]

*Decided December 15, 1969.*

---

7. Counsel representing the appellants on appeal did not represent them below.

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and SMITH, JJ.

*Charles W. Bell,* with whom were *John T. Bell* and *Bell & Bell* on the brief, for appellant.

No brief filed on behalf of appellee.

BARNES, J., delivered the opinion of the Court.

The appellant, A. B. Veirs, Inc. (Veirs), plaintiff below, urges upon us that the Circuit Court for Montgomery County (Shure, J.) erred in passing its order of April 3, 1969, sustaining the demurrer of the appellee, Cornelius M. Whalen, defendant below, to the Amended Bill of Complaint filed by Veirs, without leave to amend,

upon two grounds: (1) that the equity suit was barred by a judgment entered against Veirs in a prior action at law upon the principle of *res judicata* and (2) that the amended bill of complaint stated no cause of action in equity.

Judge Pugh on September 4, 1968, had sustained the demurrer of Whalen to the original bill of complaint, filed June 4, 1968, on the ground that it did not state a cause of action in equity, but gave Veirs 15 days within which to amend. The amended bill of complaint was filed on September 18, 1968, and Whalen again demurred challenging its sufficiency. Whalen gave three reasons why it did not state a cause of action in equity and also demurred on the ground that the "prior adjudication between the parties in Civil Law No. 2,455 rendered on its merits, is an absolute bar to this proceeding."

The amended bill of complaint alleges that the plaintiff Veirs is, and has been, engaged in the business of constructing and installing asphalt parking lots for many years. The defendant Whalen owns real estate in Montgomery County known as lots 8 and 10 in a subdivision named "Montrose" and in addition is the president and controlling officer of Congressional Motors, Inc., a General Motors automobile dealer. On March 9, 1966, Veirs entered into a contract with Whalen's brother who then owned a business known as Grandin Construction Company to install asphalt parking lots on the defendant Whalen's property. The parking lots were to be used in connection with the body shop of Congressional Motors which Whalen and Congressional Motors were building on Whalen's land. Whalen had a close confidential relationship with his brother in the operation of the brother's business. Whalen knew during the period when Veirs was constructing the asphalt parking lot on his land that his brother and Grandin Construction Company were insolvent, or were near insolvency. Whalen concealed this knowledge from Veirs and allowed Veirs to continue to work on the installation even though Whalen knew prior to, during, and after the construction of

the parking lot that Veirs looked to Whalen personally for payment for the labor and materials used in connection with the construction. Whalen "was responsible for a small payment being made" to Veirs on account of the work done by Veirs. The work was completed and since September 1, 1966, Whalen has used and enjoyed the improvement to his real estate and profited by such use but refuses to pay the balance of $3,570 due "though requested and promised on many occasions." As a result thereof the improvements to Whalen's land were acquired by Whalen's "misrepresentation, imposition, and concealment and under circumstances rendering it inequitable for the Defendant to retain the same without payment therefor." Paragraph 6 of the amended bill of complaint is as follows:

"6. That thereafter the Defendant did refuse to make further or additional payment or cause further or additional payment to be made to the Plaintiff, and the Plaintiff herein did bring an action at law against the Defendant in this Honorable Court by Law No. 21455 and this Honorable Court did decide that said action in favor of the Defendant on the basis that the Plaintiff had no distinct contract with the Defendant herein for the installation of the aforesaid asphalt parking lot. That the Plaintiff herein has no adequate remedy at law for damages suffered as recited herein, and that in equity and good conscience the Defendant is personally responsible to the Plaintiff for his losses detailed herein for the Defendant has wrongfully and without right received and taken possession of the said asphalt parking lot and control thereof, has enjoyed its use and profits, all to the total exclusion of the rights of the Plaintiff herein."

The prayers for relief were (1) for a decree ordering a trust in favor of Veirs be impressed upon Whalen's

real estate for $3,750 with interest at 6% per annum from September 1, 1966, and (2) other relief.

Inasmuch as we are of the opinion that the lower court correctly ruled that the prior adjudication at law is a complete bar to the equity suit upon the principle of *res judicata,* we do not find it necessary to consider the alternative ground upon which the Chancellor sustained the demurrer to the amended bill of complaint.

As we have already pointed out, the prior adjudication in the action at law appears upon *the face* of the amended bill of complaint so that the defense of *res judicata* may be availed of by the defendant by demurrer. See *Lusby v. Baltimore Transit Co.,* 199 Md. 283, 86 A. 2d 407 (1952) ; *Snodgrass v. Stubbs,* 192 Md. 287, 64 A. 2d 130 (1949).

The prior action at law was adjudicated upon the merits and was between the same parties, involved the same subject matter and indeed, the identical amount [1] as was involved in the equity suit. Under these circumstances the prior adjudication at law is an absolute bar to the equity suit.

As Chief Judge Hammond aptly stated, for the Court, in *Pat Perusse Realty Co. v. Lingo,* 249 Md. 33, 35, 238 A. 2d 100, 102 (1968) :

"The basic rule of res judicata is that facts or questions which were in issue in a previous action and were therein determined by a court which had jurisdiction of the parties and the subject matter are conclusively settled by a final judgment in the first case and may not again be litigated in a subsequent action between the same parties or their privies even though the subsequent suit takes a different form or is based on a different cause of action. *Sterling v. Local 438, etc.,* 207 Md. 132; *Snodgrass v. Stubbs,* 192 Md.

---

1. The plaintiff filed a copy of the declaration which he had filed in the first case in the present case which indicates that the same net amount, *i.e.,* $3,570 was involved in the first case.

287; *De Maio v. Lumbermens Mutual,* 247 Md. 30."

In view of the alleged fact that the law action and the equity suit were between the *same parties,* we need not consider the question of mutuality, carefully and fully considered in the opinion in *Pat Perusse.*

It is also well established that the doctrine of *res judicata* applies not only to the issues expressly decided in the prior case between the same parties, but to every matter which *might* have been presented in that prior case. As Judge (later Chief Judge) Prescott stated for the Court in *Nutter v. Baltimore,* 232 Md. 210, 213, 192 A. 2d 477, 479 (1963):

> "*Res judicata* * * * applies not only to every issue between the same parties expressly decided in a prior case, but also to every matter which properly might have been presented."
> (citing three prior Maryland cases and other authorities)

Veirs in its brief and at the argument before us relied upon the decision of our predecessors in *Morton v. Harrison,* 111 Md. 536, 75 A. 337 (1909). In our opinion, this reliance is misplaced. In *Morton,* the original action at law was filed by Harrison, the plaintiff in that case, in the Baltimore City Court, to recover upon an alleged contract between him and the defendant Morton whereby Harrison, who allegedly owned a machine and device for making barrels under an assignment from Campbell, the inventor, had agreed to sell to Morton the rights of Harrison in the device for a sum certain. Morton defended on the ground that the agreement had never been delivered to him and hence he was not liable for the alleged purchase price. The judgment in the action at law was in favor of the defendant Morton. After the rendition of that judgment in favor of the defendant Morton for costs, the plaintiff Harrison filed a bill in equity in the Circuit Court of Baltimore City against

Morton for discovery and an accounting for any royalties and profits received by Morton *as trustee* for Harrison of the patents and device given *by Campbell* to Morton *in trust* for Harrison. The defendant in the equity suit (Morton) filed a plea in bar to the bill of complaint alleging the proceedings in the Baltimore City Court. The Chancellor overruled this plea and the defendant Morton appealed. In affirming the order of the Chancellor, Judge Pearce, for the Court, pointed out that the theory of recovery in the law action—an action to enforce a specific contract to sell for a specific sum of money allegedly between Harrison and Morton — was entirely different from the theory of recovery in the equity suit, *i.e.*, for an accounting of any profits derived from *a trust* created by *Campbell, the inventor,* for Harrison's benefit, Campbell not being a *party* to the original action at law, and Morton having admitted in the prior action that *Campbell* had given him the invention and device in trust for Harrison.

The differences between *Morton* and the present case are readily apparent. In *Morton* the law action was upon a specific contract of sale for a specific amount allegedly between Harrison and Morton; whereas in the second equity suit the recovery was based—not on the contract involved in the prior litigation—but upon a *trust* created between Campbell, a person not a party to the original action and Morton *as trustee* for the benefit of Harrison. The second suit was for an accounting of royalties and profits — an uncertain and possibly non-existent amount—as contrasted with an attempted recovery on an alleged specific contract of sale for a sum certain. In the present case, on the other hand, the attempted recovery against the defendant Whalen was upon the contract between Veirs and Whalen's brother and the brother's construction corporation and for the specific balance allegedly due of $3,570. The second equity suit is upon the *same contract* and for the same specific balance due of $3,570, the only difference between the two actions being that in the second case, it is alleged that Whalen knew of

the insolvency or *near* insolvency of his brother and his brother's construction company, concealed this knowledge from Veirs and permitted Veirs to continue to construct the parking lot.

The alleged fraudulent concealment of facts and the other matters alleged in the amended bill of complaint could have been discovered prior to, and used by Veirs in his action at law by way of a count to recover for alleged deceit.[2] It is apparent that the application of the doctrine of *res judicata* is not rendered inapplicable because Veirs can supposedly prove a better case in the second case than he did in the first case. As was stated in *Pat Perusse Realty, supra*:

> "Perusse suggests that it could perhaps try a better case against Elizabeth than it did against Ted. This argument, and the argument that there were errors in the conduct and the result of the trial which led to the first judgment, have been held to be unavailing where res judicata is applicable. *Snodgrass v. Stubbs*, 192 Md. 287, 291; *De Maio v. Lumbermens Mutual*, 247 Md. 30."
> (249 Md. at 46, 238 A. 2d at 108)

*Order of April 3, 1969, affirmed, the appellant to pay the costs.*

---

2. We do not, of course, pass upon the sufficiency of the allegations of the amended bill of complaint to state a cause of action at law for deceit, but merely point out that if Veirs had such an action, it *could* have been asserted in the original action at law. See Schnader v. Brooks, 150 Md. 52, 132 A. 381 (1926). Cf. Levin v. Singer, 227 Md. 47, 175 A. 2d 423 (1961).