RANDOLPH HILLS, INC. ET AL. *v.* SHOREHAM
DEVELOPERS, INC. ET AL.

[No. 392, September Term, 1971.]

*Decided June 30, 1972.*

The cause was argued before BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*H. Vernon Eney*, with whom were *Robert M. Thomas, Judith A. Armold, Venable, Baetjer & Howard* and *Leonard S. Blondes* on the brief, for appellants.

*Michael Evan Jaffee*, with whom were *Larry N. Gandal, John M. Bray, Arent, Fox, Kintner, Plotkin & Kahn, Paul H. Mannes* and *Klavan & Mannes* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

The appellant, Randolph Hills, Inc. (RHI) is no stranger to this Court.[1] By August of 1961, RHI had acquired a tract of some 65 acres in Montgomery County and in June of 1962, realizing that about half of the tract was likely to be condemned for a school site, contracted to sell a 32.61 acre parcel to Shoreham Developers, Inc. (Shoreham) for $351,000.00. On the same day, Shoreham entered into a contract with Perlmutter Bros., Inc. (Perlmutter),[2] under which Shoreham agreed to pay Perlmutter $162,000.00 to develop the 32.61 acre tract as 108 lots, subject to the proviso that the $162,000.00 figure would be reduced by $4,750.00 for each lot less than 108. The Perlmutter agreement was usually characterized as the "finishing contract." [3]

For reasons not important here, Perlmutter experienced considerable delays in performing its contract. Morris Perlmutter, a principal in both RHI and Perlmutter, after attempting to persuade Shoreham to abandon the whole project, finally refused to make settle-

---

1. Randolph Hills v. Montgomery County Council, 264 Md. 78, 285 A. 2d 620 (1972); Shoreham v. Randolph Hills, 248 Md. 267, 235 A. 2d 735 (1967).
2. The performance of Perlmutter's contract was guaranteed by Saul Perlmutter, its president, and by Louis Perlmutter and Morris Perlmutter, who would appear to be the moving spirits in both Perlmutter and RHI.
3. In Shoreham v. Randolph Hills, 248 Md. 267, 235 A. 2d 735 (1967) we treated the sales agreement and the finishing contract as a single contract, because Shoreham was interested in buying fully developed lots and there was evidence that the undertaking had been made the subject of separate agreements for business reasons.

ment under the sales agreement. In August 1964, Shoreham and Theodore N. Lerner, one of its officers, sought specific performance by RHI and Perlmutter. The bill of complaint was dismissed below at the end of the plaintiff's case. In *Shoreham v. Randolph Hills*, 248 Md. 267, 235 A. 2d 735 (1967), we reversed the order of dismissal and remanded the case for trial.

In May 1968, a decree was entered against RHI, directing it to specifically perform the sales agreement. In February 1969, RHI conveyed the 32.61 acre parcel to Shoreham. The difficulties between RHI and Shoreham were far from ended, however. In September 1969, Shoreham and Lerner brought a new action in equity in the Circuit Court for Montgomery County, joining RHI, Perlmutter, as well as Saul, Louis and Morris Perlmutter, and the trustees named in deeds of trust securing notes given by Shoreham to RHI and Perlmutter at the February 1969 closing.

The bill of complaint after two amendments contained seven "Counts." [4] The first Count sought a cancellation of the $162,000.00 note given by Shoreham to Perlmutter at the closing and of the deed of trust securing the note. Count II sought a cancellation of the deed of trust securing the $162,000.00 note on the theory that it constituted a cloud on title. Count III asked a reformation of the $162,000.00 note and of a note for $301,000.00 given RHI to the end that interest would not commence to run on either until 21 months after Perlmutter commenced to develop the 32.61 acre parcel as contemplated by the finishing contract. Count IV claimed damages for the breach of the Perlmutter contract. Count V sought the imposition of a constructive trust on $16,752.30 which RHI had received for a right of way for a sewer across part of the 32.61 acre tract subsequent to the 1962 contract but prior to the 1969 closing. Count VI sought to

---

4. The appellants are correct in their statement that there is neither warrant nor precedent for joining several counts in a bill in equity, *see* Maryland Rule 370 a. No point is made of this, however.

have Shoreham exonerated from any liability on a $30,-000.00 road construction contract on which RHI allegedly obligated Shoreham, without its knowledge or consent. Count VII sought to impose a constructive trust on $43,700.00, being part of an award of $50,000.00 as consequential or severance damages attributed to the tract of land not taken in condemnation, of which the 32.61 acres was a part, received by RHI after the execution of the contract but prior to closing.[5]

Only Counts I, II, V and VII (the latter having been added by a later amendment) survived RHI's demurrer. Summary judgment was entered for Shoreham on Counts I and II, because Perlmutter's refusal to perform the finishing contract was not disputed,[6] but was denied on Counts V and VII. RHI's motion for summary judgment on all four Counts was denied. The order granting Shoreham's motion for summary judgment directed that the case go to trial on Counts V and VII.

At trial on Counts V and VII, Shoreham offered no testimony, and the chancellor limited the evidence to be offered by RHI to the question of expenses incurred in connection with the payment received for the right of way and the recovery of severance damages, which RHI found it impossible to prove. As a consequence, a decree was entered, which provided in part for the payment by RHI to Shoreham of the $16,752.30 claimed in Count V and the $43,700.00 claimed in Count VII, with interest in each case, and costs. It is from this portion of the decree that the appeal was taken.

RHI says that there are five reasons why the decree should be reversed. We shall consider them in the order presented.

---

5. The Montgomery County Board of Education condemned about 28 acres of the 33 acre parcel to which RHI held title after the sale to Shoreham, leaving RHI with 4.7 acres. RHI received $425,000.00 for the land taken.

6. This refusal was occasioned by changes in county requirements between 1962 and 1969 which apparently compelled a developer to put electric service underground, install street lighting, control soil erosion, and enclose storm water drains.

## (i)

It was error for the lower court to limit the issues upon trial of Counts V and VII without complying with Maryland Rule 610 d 4.

On 24 March 1971, the chancellor had entered a memorandum and order granting Shoreham's motions for summary judgment on Counts I and II, denying the motions as regards Counts V and VII and directing that the case go to trial on Counts V and VII. In the course of his memorandum, in speaking of Count V, the chancellor said:

> "Under the circumstances reflected in the file, it would be clearly inequitable for the vendor to retain the proceeds from this right of way sale merely because he still held the legal title. However, there are affidavits and counter-affidavits in the file in regard to this transaction and the Court is, therefore, persuaded that there must be a hearing to determine the net amount due to the equitable owner, as any expenses in connection with this transaction must be deducted from the gross sale price, as same may be proven at the trial as a damage item."

Turning to Count VII, Judge Shure said:

> "While the plaintiffs are equitable owners, as aforesaid, and clearly entitled to participate in said consequential damages, nevertheless Summary Judgment will not be granted at this time as to Count VII. As in Count V, a trial will be necessary to determine the net amount due the equitable owners."

Seemingly, Judge Shure intended to comply with the mandate of Maryland Rule 610 d 4. Rule 610 deals generally with summary judgment procedure; 610 d with the proceedings to be had on a motion for summary judgment, and 610 d 4 provides:

"If on the motion judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, a party shall not be limited at the trial to the facts stated in his affidavit. But in such case, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in the controversy, and direct such further proceedings in the action as justice may require. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly."

It would appear from the text of the memorandum that Judge Shure intended to follow the mandate of the Rule applicable when ". . . judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary . . ." but failed to incorporate a finding of ". . . the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in the controversy . . ." in his formal order. RHI makes much of the fact that it was error for the court to limit the issues at trial without entering the order contemplated by Rule 610 d 4. Under other circumstances, this point may be well taken, since it has been long established that the language of a memorandum or opinion cannot be imported in an order or decree save in cases where the order or decree is ambiguous, *Alleghany Corp. v. Aldebaran Corp.*, 173 Md. 472, 478-479, 196 A. 418 (1938) ; *Greif v. Teas,* 156 Md. 284, 295, 144 A. 231 (1929) ; Miller, *Equity Procedure* § 261, at 326 (1897). However, Shoreham's liminal response to this contention is that the question does not

plainly appear to have been tried and decided below and cannot be considered here, Rule 885.

In October 1971, Shoreham filed a motion for the entry of an order limiting issues and RHI responded opposing the entry of such an order. No order was entered on Shoreham's motion nor does it appear to have been denied. Some weeks later, RHI filed a memorandum opposing ". . . the Order orally stated by the Court in Chambers in limiting issues." It cannot be fathomed from the record what this "oral order" was and it was certainly never entered on the docket. We can only assume that it may have been an oral repetition of the provisions of the 24 March 1971 memorandum. What really happened was that RHI became so engrossed in its strenuous opposition to the substance of the order that it failed to make the point that the order was deficient in form. While its right to appeal from the substance of the order was carefully preserved, the right to challenge the form was not.

### (ii)

Apart from the procedural defect, it was error for the lower court to limit the trial on Counts V and VII to a single issue on one element of damages, in view of the genuine dispute between the parties as to other material facts.

The arguments advanced by RHI are focused on Count V on the one hand, and Count VII, on the other.

As to Count V, it is not disputed that Glenmont Hills Associates, the owner of an adjacent tract, paid RHI $16,752.30 and that RHI conveyed to Washington Suburban Sanitary Commission a right of way over a portion of the 32.61 acre parcel in May of 1966 when Shoreham was, or was later determined to be, the equitable owner of the parcel.

RHI says the disputed fact is whether it was paid for the right of way itself or was reimbursed for the expenses to which it had been put in delineating the right of way.

We find nothing in the record to support this contention. Nathan Brisker, the principal of Glenmont Hills, said in an affidavit filed in support of Shoreham's motion for summary judgment, that he paid $16,752.30 for the conveyance. Saul Perlmutter, in an opposing affidavit, said that it was to defray expenses. On deposition, he said he had not participated in the negotiations and did not ". . . recall exactly what it [the payment] was for." Morris Perlmutter, on deposition, said that Brisker's payment was "to let him hook up to the sewer, something like that."

RHI was given an opportunity to prove its expenses and could not or would not. Clearly, RHI had no right as holder of the legal title, to withhold from the equitable owner that portion of the consideration which it received in excess of its expenses, see *Annapolis v. W. Anna. Fire & Imp. Co.*, 264 Md. 729, 735-736, 288 A. 2d 151 (1972); *O'Connor v. Estevez*, 182 Md. 541, 555, 35 A. 2d 148 (1943); *Springer v. Springer*, 144 Md. 465, 475, 125 A. 162 (1924), even if we assume that Perlmutter, under the finishing contract, was authorized to act for Shoreham in the negotiations. Whether Shoreham was or was not prejudiced by the granting of the right of way is not only not material: it is completely irrelevant.

RHI places tangential reliance on paragraph 11 of the finishing contract:

> "It is understood and agreed that in the event any sums are paid by any County or municipal corporation to defray the cost of street improvements adjoining lands purchased or intended to be purchased by the School Board or any municipal corporation, any sums so paid shall inure to the benefit of the Contractor, and the Owner waives any rights which he may have thereto."

which does not even remotely apply to the conveyance of the right of way.

As regards Count VII, the thrust of the argument made by RHI is essentially this: while conceding that the April

1967 inquisition in the condemnation case awarded "consequential" damages of $50,000.00 to RHI, all attributed to the 37.3105 acres to which RHI had legal title (including the 32.61 acre parcel of which Shoreham, in May 1968 was determined to be the equitable owner), the chancellor's allocation of the award on a purely mathematical basis, *i.e.*, 32.61/37.3105 of $50,-000.00, or $43,700.00, failed to take cognizance of a disputed issue of fact: whether each of the remaining acres was damaged to the same extent.

There is no question that both parties to the sales agreement contemplated the possibility of a condemnation. In this regard, the sales agreement contained a significant provision:

> "Purchaser [Shoreham] understands that the Maryland-National Capital Park and Planning Commission and/or the County School Board has indicated its desire to purchase two tracts of land contiguous to the aforesaid property [the parcel purchased by Shoreham], and agrees that Seller [RHI] shall be entitled to any sums paid by such prospective purchasers by way of condemnation or otherwise for any land within the bed of any dedicated street contiguous to the property sold to said municipal agencies."

Here again, the contract provision is of little help. The problem could have been avoided by RHI, which was the only defendant in the condemnation case. Had there been a disclosure of Shoreham's interest as contract purchaser, there might well have been an apportionment of the award between the acreage subject to the contract of sale, and the parcel retained by RHI. No such disclosure was made, and it would seem clear that a collateral impeachment of the verdict of the jury cannot be made now. Shoreham's entitlement can be analogized to the manner in which we have treated insurance proceeds collected by a vendor when property on which there is an outstanding contract of sale is damaged prior to

settlement. *Krick v. Dougherty,* 266 Md. 97, 291 A. 2d 648 (1972); *Skinner & Sons' Co. v. Houghton,* 92 Md. 68, 48 A. 85 (1900) and *Brewer v. Herbert,* 30 Md. 301 (1869) all held that the vendor holds any insurance proceeds he may collect as trustee for the vendee, the equitable owner.

### (iii)

As a matter of law, Shoreham is not entitled to any of the consequential damages paid to RHI.

The thrust of this argument is that under Maryland law, consequential damages may only be paid to an owner who suffers a loss of a part of his property through condemnation, and not to the owner of property which is not taken unless it is rendered useless, relying on *Ridings v. State Roads Commission,* 249 Md. 395, 399, 240 A. 2d 236 (1968), Maryland Code (1957, 1971 Repl. Vol.) Art. 33A, § 5 (b).

The answer to this argument is much like that to (ii) above. Had RHI, in the condemnation proceeding, disclosed that Shoreham was the equitable owner of the 32.61 acre parcel, it is possible that the award of consequential damages might well have been made to RHI, as the owner of the remaining 4.7 acres, if the 4.7 acre tract was, in fact, the only property "adjacent" to the property taken.

Apparently confident that it would prevail in the specific performance suit, RHI said nothing about the sale to Shoreham, and consequential damages were attributed to the entire 37.3105 acre parcel, which included Shoreham's 32.61 acres. The challenge now made by RHI comes too late. The chancellor properly excluded the proffered testimony of Phillip Jolles, RHI's appraiser, who would have testified that the condemnation did not proportionately damage the value of the 32.61 acres under contract, because of RHI's failure to call Jolles as a witness, as contemplated by Rule 581 c, if for no other reason.

### (iv)

Any rights which plaintiffs may have had under Counts V and VII were extinguished as a result of merger in the deed and settlement of February 25, 1969.

RHI argues that Shoreham waived its rights to the amount received for a conveyance of the right of way in May of 1966 and to the condemnation award of April 1967, by going to settlement in February of 1969. To buttress this argument, RHI says that Shoreham had ordered a title examination shortly after the execution of the purchase agreement in June of 1962; that ordinary prudence would have dictated that this be brought to date prior to the February 1969 closing; that had the title examination been brought to date, both the conveyance of the right of way and the condemnation would have been disclosed, and that by going to settlement without raising these questions, Shoreham's rights were either waived, or its rights were merged in the deed.

We do not see it quite that way. The June 1962 agreement of sale stated:

". . . the provisions hereof shall survive the execution and delivery of the deed aforesaid and shall not be merged therein; . . . ."

This clearly prevented the provisions of the contract from being merged into the settlement. The case of *Heckrotte v. Riddle,* 224 Md. 591, 595, 168 A. 2d 879 (1961), relied on by RHI, is simply enunciative of a line of authority represented by *Millison v. Fruchtman,* 214 Md. 515, 518, 136 A. 2d 240 (1957); *Gilbert Construction Co. v. Gross,* 212 Md. 402, 129 A. 2d 518 (1957); *Kandalis v. Paul Pet Construction Co.,* 210 Md. 319, 123 A. 2d 345 (1956); *Barrie v. Abate,* 209 Md. 578, 121 A. 2d 862 (1956) which concludes that the acceptance of a deed gives rise to a *prima facie* presumption that the rights of the parties are determined by the deed. Such a presumption is clearly negated by a contract provision that

the representations contained in the contract survive the settlement. Absent such a provision, a purchaser may be held to a standard of reasonable diligence. With such a provision, a purchaser may continue to rely on the covenants in the contract, possibly even when he has knowledge of countervailing facts, which is not the case here, since in his answer to an interrogatory Theodore Lerner said that he first learned of the grant of the right of way in April of 1969 and of the condemnation award in January of 1970. This was nowhere controverted.

### (v)

The decree of specific performance of the agreement of sale is *res judicata* with respect to plaintiffs' claims under Counts V and VII.

RHI argues that since the action for specific performance, brought by Shoreham in August 1964, was finally terminated by a decree filed 23 May 1968 and because the right of way was conveyed in May 1966, and the condemnation award became final in April 1967, that under principles enunciated in *A. B. Viers, Inc. v. Whalen,* 256 Md. 162, 166-167, 259 A. 2d 516 (1969) ; *Nutter v. Baltimore,* 232 Md. 210, 213, 192 A. 2d 477 (1963) and *Alvey v. Alvey,* 225 Md. 386, 390, 171 A. 2d 92 (1961), the specific performance decree adjudicated not only the issues which were raised as between the parties, but every other matter which might have been presented as well.

Shoreham counters with the argument that the problem is essentially one of timing: that the principle invoked by RHI is clearly applicable to any cause of action which had accrued at the time the action for specific performance was instituted in August of 1964, but does not envelop matters which arose during the pendency of the litigation.

We think that Shoreham has the better of the argument. Certainly the specific performance decree was not *res judicata* as to matters which arose while the suit was pending, which gave rise to a new and wholly indepen-

dent cause of action, *compare Davis Sand v. Buckler,* 231 Md. 370, 190 A. 2d 531 (1963) *with Walzl v. King,* 113 Md. 550, 77 A. 1117 (1910) and *see Allen v. Kaplan,* 255 Md. 409, 258 A. 2d 211 (1969) ; 2 Freeman, *Judgments* § 597, at 1258 (5th ed. 1925) ; 2 Black, *Judgments* § 610, at 927 (2d ed. 1902).

*Decree affirmed, costs to be paid by appellants.*