SHOREHAM DEVELOPERS, INC. ET AL. *v.*
RANDOLPH HILLS, INC. ET AL.

[No. 301, September Term, 1972.]

*Decided June 7, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, SMITH and DIGGES, JJ.

*Michael Evan Jaffe,* with whom were *John M. Bray, Joel N. Simon, Arent, Fox, Kintner, Plotkin & Kahn* and *Paul H. Mannes* and *Klavan & Mannes* on the brief, for appellants.

*Joseph J. D'Erasmo,* with whom were *Joseph B. Simpson, Jr.,* and *Simpson & Simpson* and *Leonard S. Blondes* on the brief, for appellees.

DIGGES, J., delivered the opinion of the Court.

Randolph Hills, Inc. (RHI), appellee, must be a firm believer in the old adage, "If at first you don't succeed, try, try again." For, despite having already suffered two defeats before this Court in closely allied litigation, it continues to wage war. Unfortunately, we must, once again remand the case for still another legal skirmish.

The appeal here represents the third visit to the Court of Appeals for this dispute [1] which started on June 22, 1962,

---

1. The prior two cases are reported as Randolph Hills v. Shoreham, 266 Md. 182, 292 A. 2d 662 (1972); and Shoreham v. Randolph Hills, 248 Md. 267, 235 A. 2d 735 (1967).

when RHI, by its president, Morris Perlmutter, entered into a contract with Shoreham Developers, Inc., appellant. On the same day, Perlmutter Bros., Inc. also entered into an agreement with Shoreham. The stock of both RHI and Perlmutter Bros., Inc. is owned by the Perlmutter family.[2] Under the terms of the RHI-Shoreham contract, appellant agreed to purchase a 32.61 acre parcel of land in Montgomery County for $351,000. By the latter contract Shoreham agreed to pay Perlmutter Bros., Inc. $162,000 to develop the raw acreage into 108 finished lots, with the understanding that the $162,000 would be reduced by $4,750 for each lot less than 108.[3]

As is chronicled in our prior decisions related to this controversy, RHI experienced considerable delays in performing its contract and, after failing in an effort to persuade Shoreham to abandon the project, finally refused to settle under the sales agreement. This refusal prompted Shoreham's first action — a suit for specific performance. But, the trial court dismissed the bill of complaint at the close of the complainant's case. In *Shoreham v. Randolph Hills*, 248 Md. 267, 235 A. 2d 735 (1967), we concluded that a prima facie case had been established and, therefore, reversed the order of dismissal and remanded the case for further proceedings.

Following remand, a decree was entered against RHI in May 1968 directing it to specifically perform the sales agreement. In February 1969 appellee complied by conveying the 32.61 acre parcel to Shoreham. At settlement, pursuant to their agreement, appellant gave RHI a down

---

**2.** Randolph Hills, Inc. is owned, controlled and directed by Saul, Louis and Morris Perlmutter, who also control Perlmutter Bros., Inc. These two corporations and three individuals are all appellees here; but, for convenience, we will refer to them all as RHI.

**3.** The first contract was called the sales agreement, the second the "finishing contract." However, it was settled by our two prior decisions in this dispute that, as Shoreham was interested in buying fully developed lots, these two documents form a single contract. In fact, if one adds the $351,000 purchase price to the $162,000 finishing price one gets a total price of $513,000, the same amount obtained by the multiplication of 108 lots by the $4,750 deduction mentioned in the contract for any downward deviation from this specified number of lots. The contract was divided into two separate agreements at the request of the Perlmutters so they could obtain tax benefits.

payment of $50,000 and, to evidence the balance of the purchase price, executed and delivered a deferred purchase money note secured by a first deed of trust. Additionally, as security for the payment of the $162,000 contract price that would be owed when the raw acreage was converted into finished lots, Shoreham executed and delivered a note in that amount secured by a second deed of trust on the property. But, the difficulties between RHI and Shoreham were far from over. In September 1969, when the work contemplated by the "finishing contract" had not been begun, Shoreham, and its president, Theodore N. Lerner, instituted a new equity action in the Circuit Court for Montgomery County. The bill of complaint in that suit, after being amended, contained seven "counts." [4] As summarized by Judge Singley for the Court in *Randolph Hills v. Shoreham*, 266 Md. 182, 185-86, 292 A. 2d 662 (1972):

> "The first Count sought a cancellation of the $162,000.00 note given by Shoreham to Perlmutter at the closing and of the deed of trust securing the note. Count II sought a cancellation of the deed of trust securing the $162,000.00 note on the theory that it constituted a cloud on title. Count III asked a reformation of the $162,000.00 note and of a note for $301,000.00 given RHI to the end that interest would not commence to run on either until 21 months after Perlmutter commenced to develop the 32.61 acre parcel as contemplated by the finishing contract. Count IV claimed damages for the breach of the Perlmutter contract. Count V sought the imposition of a constructive trust on $16,752.30 which RHI had received for a right of way for a sewer across part of the 32.61 acre tract subsequent to the 1962 contract but prior to the 1969 closing. Count VI sought to have Shoreham exonerated from any liability on a $30,000.00 road construction contract on which RHI allegedly obligated

---

4. We noted in Randolph Hills v. Shoreham, 266 Md. at 185, that "there is neither warrant nor precedent for joining several counts in a bill in equity, *see* Maryland Rule 370 a."

Shoreham, without its knowledge or consent. Count VII sought to impose a constructive trust on $43,700.00, being part of an award of $50,000.00 as consequential or severance damages attributed to the tract of land not taken in condemnation, of which the 32.61 acres was a part, received by RHI after the execution of the contract but prior to closing.

Only Counts I, II, V and VII (the latter having been added by a later amendment) survived RHI's demurrer. Summary judgment was entered for Shoreham on Counts I and II, because Perlmutter's refusal to perform the finishing contract was not disputed, but was denied on Counts V and VII. RHI's motion for summary judgment on all four Counts was denied. The order granting Shoreham's motion for summary judgment directed that the case go to trial on Counts V and VII.

At trial on Counts V and VII, Shoreham offered no testimony, and the chancellor limited the evidence to be offered by RHI to the question of expenses incurred in connection with the payment received for the right of way and the recovery of severance damages, which RHI found it impossible to prove. As a consequence, a decree was entered, which provided in part for the payment by RHI to Shoreham of the $16,752.30 claimed in Count V and the $43,700.00 claimed in Count VII, with interest in each case, and costs."

RHI appealed from the entry of that decree but to no avail as this Court affirmed it. All of this, however, is only important as background; what is really relevant to the present dispute is what happened to the claim for damages for breach of contract contained in Count IV after that count failed to survive RHI's demurrer.

By Count IV of its bill of complaint, Shoreham sought to obtain $250,000 in damages, claiming that this amount represented the additional sum appellant will now be forced

to expend in order to obtain the same work it contracted in 1962 with RHI to perform for $162,000. Appellee demurred to this count claiming in pertinent part that:

"Count IV is further defective in that this is an action for a breach of contract for which there is an adequate remedy at law, this being a suit for money damages. Defendants would be greatly prejudiced if this action were allowed to remain in equity as said Defendants would then be denied a right to jury trial."

The demurrer to Count IV was sustained, the chancellor said, because "It is persuasively argued by and on behalf of [RHI] in this case that [it] would be entitled to a jury trial on the matter of entitlement or not of the complainants to the relief prayed." Additionally, the chancellor commented that the count "was not stated to be in the alternative, and yet, of course, it is entirely at variance with the other counts contained in the bill of complaint." Appellant was not granted leave to amend Count IV of the bill but was permitted to amend another count, which it apparently did not do, and later special permission was allowed to add a count stating an additional claim not relevant here. After its claim for damages under Count IV was eliminated from the equity case, appellant filed this suit on the law side of the court claiming damages for breach of the contract. RHI eventually responded to this law suit with a general issue plea and also filed a counter-claim on the theory that Shoreham had breached the contract. In its initial plea, RHI did not challenge the propriety of Shoreham's maintaining parallel equity and law cases to secure complete relief.

RHI, however, did file a motion to stay the law action pending final determination of the equity case, alleging that:

"1. The fundamental legal issues that are present in this law case are the same as those involved in the equity case [then pending]. The disputes arise out of and concern the identical contractual documents and their purported breach.

2. In the equity case those essential legal issues

have already been tentatively decided by Judge Shure in his Order and Opinion [by granting summary judgment on Counts I and II and when all counts are finally decided], it is a certainty that an appeal will be taken from the final determination. A stay of these legal proceedings, while allowing the equity case to proceed, *would afford to all parties a swift, non-prejudicial, and equitable manner of testing those legal issues upon which both actions are dependent.* (Emphasis added.)

3. The Court, by restraining plaintiffs from prosecuting and maintaining two separate actions on the same cause, would relieve your defendant from the 'double vexation' of defending itself in two courts at the same time. Furthermore, it would avoid a potential 'clashing of jurisdiction' which would result from a jury finding a verdict one way and a chancellor another."

Over Shoreham's objection, the law action was stayed until the equity case was concluded.

When the final equity decree was filed, as promised, RHI appealed. However, contrary to its representation that it would test the "essential legal issues" common to the two cases, RHI voluntarily dismissed its appeal as to Counts I and II, which involved the issue of breach of contract, and only attacked the propriety of the court's rulings on the remaining two counts, which sought the imposition of a constructive trust on certain funds which were allegedly wrongfully retained by appellee. By this action on the part of RHI, no test of the "legal issues upon which both actions are dependent" was conducted in that appeal. And, once again reneging on its statement that the stay would permit a "swift, nonprejudicial and equitable manner of testing the legal issues" the appellee instead attempts to prohibit such a determination by asserting that the termination of the prior equity suit now bars the present law suit.

This issue was raised by RHI almost two years after it filed its initial plea in the law case and was sprung on the

appellant on the same day that this Court decided the appeal in the equity case. On that day, appellee filed a plea *"Puis Darrein Continuance"* under Maryland Rule 342 c 1 (e), asserting that the final determination of the equity suit was a defense ·on the merits arising after this suit was brought and barred the further maintenance of the law case. Then, for the first time, RHI suggested that this suit was no longer maintainable since, by the equity case, Shoreham had "irrevocably elected the remedy of rescission of the contract" and had obtained restitution by the return of its consideration — *i. e.* the cancellation of the note and second deed of trust. Additionally, RHI argued that since Shoreham could have sought damages in the equity suit and did not, the final decree there is now res judicata in this law action and the issue of damages cannot here be relitigated. The trial judge agreed; and, citing *A. B. Veirs, Inc. v. Whalen*, 256 Md. 162, 259 A. 2d 516 (1969), ruled that this suit was barred by the doctrine of res judicata since the claim for damages might have been presented in the equity suit and, as it was not, it could not be presented in this law case. The judge further found that, as damages and restitution are alternative remedies and since "the value of [RHI's] performance had been set by the parties at $162,000 and a promissory note secured by deed of trust had been given," when Shoreham "elected to seek restitution and cancellation of the consideration, the promissory note and deed of trust," rather than claiming damages, it opted to have its consideration restored and "cannot now be heard to claim for additional damages as well." Therefore, judgment was rendered in favor of RHI for costs. This appeal followed. As we disagree with the trial court's treatment of both the election of remedies and res judicata issues, we will reverse its judgment and remand the case for trial.

In reaching his conclusion concerning the application of the doctrine of election of remedies, the trial judge reasoned that the value of RHI's contemplated performance was set by the parties at $162,000, an amount evidenced by the note and secured by the second deed of trust, and, by seeking to have the note and deed voided, cancelled, released, and

returned rather than claiming damages, Shoreham had elected to seek restitution rather than the alternative remedy of damages. The law pertaining to the doctrine of election of remedies is quite technical. To compel a litigant to select among his remedies frequently is onerous. This makes the doctrine a severe one and a court should not strain to employ it or seek to extend lightly its applicability. Rather, it "should only be applied to actions taken by the same litigant which are necessarily inconsistent." *Petillo v. Stein*, 184 Md. 644, 652, 42 A. 2d 675 (1945). The function of this doctrine is to estop a plaintiff "from ignoring the judgment rendered, changing his position and adopting the remedy he had repudiated and repudiating the one he had adopted. He is not at liberty 'to again vex the same defendant with another suit in a different form of action for the identical demand.' " *Travelers v. Nationwide*, 244 Md. 401, 416, 224 A. 2d 285 (1966); *Bolton Mines Co. v. Stokes*, 82 Md. 50, 59, 33 A. 491 (1895). *See generally* 25 Am. Jur. 2d, *Election of Remedies*, §§ 1-7 (1966); 28 C.J.S., *Election of Remedies*, §§ 1-3 (1941). Therefore, if one claim or remedy is pursued to judgment an inconsistent claim is thereafter barred.

There is no doubt that the remedies of restitution and damages are alternative, only one of which will be given as relief for a breach of contract. And, if one of these is pursued to judgment the other is barred. *Restatement of Contracts*, § 384 (1) (1932); 5A *Corbin on Contracts*, § 1223 (1964); *Williston on Contracts*, §§ 1454, 1455 (1970). This is so because the two are at least theoretically inconsistent. And, "If the plaintiff is given judgment for his money back or for the restoration of the status quo in another form, he will not also be awarded the value of the performance that was promised him." *Restatement of Contracts*, Explanatory Notes § 384 (1), comment *a* on subsection (1) (1932). 5A *Corbin on Contracts*, § 1223 (1964).

Here, RHI urges, as the trial judge held, that since the "appellant pursued to judgment and obtained in the equity suit complete restitution of the appellee's promise to perform the engineering contract, [it cannot] now in the law

action ask for money damages measured by the full value of those services." We do not agree. Restitution is a remedy that is available in many kinds of cases and the facts that justify resort to this relief and the form it takes are dependent upon the circumstances present. *Restatement of Contracts*, Explanatory Notes § 347, comment *a* at 586 (1932). It is unnecessary, and would be impossible, for us to determine here for all cases what would constitute restitution, what form the remedy would take, or the circumstances under which it is available. However, we conclude that under the facts here Shoreham did not obtain restitution.

The trial judge concluded that, as the value of RHI's contemplated performance was set at $162,000, Shoreham, by deciding to pursue its equity case to final judgment, after it had filed its law suit, elected to seek restitution and, when it obtained cancellation of the note as well as the second deed of trust securing it, the entire consideration was restored and it cannot now claim damages for breach of contract. This analysis fails on two grounds. First, as has been determined in the two prior suits that are part of this continuing dispute, the two agreements here are but one contract involving the sale of finished lots. Therefore, the consideration for the contract is the total purchase price of $513,000. The purpose of restitution is to put the injured party in as good a position as that occupied before the contract was made. 5 *Corbin on Contracts*, § 1107 (1964). To achieve this, Shoreham might have sought rescission of the whole contract and restitution of its entire consideration; but, it did not do so. Rather, it decided to treat the contract as in force and sue for damages for its breach. Secondly, this remedy contemplates that the wrongdoer will return what he has received from the injured party. However, in the equity suit, Shoreham, as the injured party, did not seek to receive from RHI all it had given. It did not attempt to recover its down payment, deferred purchase money note, or first deed of trust. It only sought the cancellation of the note that evidenced the debt that would be created upon completion of the "finishing contract" and the second deed of

trust securing it. By so limiting its request Shoreham could not have been seeking restitution. In fact, RHI did not receive anything of value to it from Shoreham when it received the $162,000 note and the second deed of trust; and therefore had nothing to return. This is so because the note delivered to the appellee was only evidence of a debt that would be created upon performance; it was not payment. And as no work had been done to justify payment, RHI acquired no consummated rights under the second deed of trust which secured the note. *Cf. Weiprecht v. Gill*, 191 Md. 478, 486, 62 A. 2d 253 (1948). Under the circumstances here, we do not think that Shoreham either sought or obtained restitution in its equity suit.

Furthermore, we do not see how the relief sought in that case is necessarily inconsistent with the remedy desired here so that the redress in equity constituted an election of remedies. This doctrine is only available "where there are two or more co-existent remedies available to the litigant at the time of election which are repugnant and inconsistent. This rule is upon the theory that, of several inconsistent remedies, the pursuit of one necessarily involves or implies the negation of the others. The rule of irrevocable election does not apply where the remedies are concurrent or cumulative." 25 Am. Jur. 2d, *Election of Remedies*, § § 10-12 (1966). This quotation is in accord with our holdings in *Travelers v. Nationwide, supra,* and *Bolton Mines Co. v. Stokes, supra.* Here, we conclude that the remedies sought by appellant are cumulative and consistent. Therefore, both are maintainable. Shoreham originally sought its remedy in equity for relief peculiar to that court, and included with it a claim for monetary damages for breach of contract on the basis that equity having once obtained jurisdiction will award complete relief. *Hardisty v. Kay*, 268 Md. 202, 299 A. 2d 771 (1973). The claim for damages for breach of contract as well as the request that the note and deed be cancelled in order to remove a cloud from the title to the property are consistent remedies and the granting of both would be permissible in an equity suit.

However, when Shoreham filed its bill in equity seeking

such complete relief, RHI demurred. The chancellor sustained this demurrer as it related to the damage claim and indicated that, if this claim could be brought at all, it would necessarily have to be maintained as a law case. Shoreham, rather than waiting until the end of the case and appealing that ruling, accepted it and filed this law suit for damages for breach of contract. Now RHI argues that the trial judge was correct here when he concluded that since the claim for damages might have been included in the equity suit it cannot be brought in this case, as the final judgment in the equity suit is res judicata. We will not review the entire law of the doctrine of res judicata, as it was recently fully considered in our decisions in *A. B. Veirs, Inc. v. Whalen,* 256 Md. 162, 259 A. 2d 516 (1969); and *Pat Perusse Realty Co. v. Lingo,* 249 Md. 33, 238 A. 2d 100 (1968). These cases make clear that: "The basic rule of res judicata is that facts or questions which were in issue in a previous action and were therein determined by a court which had jurisdiction of the parties and the subject matter are conclusively settled by a final judgment in the first case and may not again be litigated in a subsequent action between the same parties or their privies . . . ." *A. B. Veirs, Inc. v. Whalen, supra* at 166. As the law action here and the prior equity suit involve the same parties, we need not concern ourselves with the issue of mutuality. "It is also well established that the doctrine of *res judicata* applies not only to [bar litigation of] the issues expressly decided in the prior case between the same parties, but to every matter which *might* have been presented in that prior case." *A. B. Veirs, Inc. v. Whalen, supra* at 167.

The issue of damages was not decided on the merits in the equity case, as the chancellor sustained RHI's demurrer to that claim on a technicality without granting leave to amend. Although the chancellor, in his opinion sustaining RHI's demurrer to Count IV, speaks in terms of the count being infirm because the relief sought there was not requested in the alternative, the demurrer must have been sustained on the basis that, since Shoreham had an adequate remedy at law as to this claim, the appellee was entitled to a

jury trial on the issues presented. The chancellor, persuaded by RHI's argument, stated that: "there is a substantial question, also, as to whether . . . the complainants here are entitled to pursue in addition in this action an action which is essentially one at law for breach of contract and for damages for breach of contract." We say this necessarily was the basis of his decision because the only ground relevant here which RHI presented to the chancellor by its demurrer challenging Count IV was the question of the existence of an adequate remedy at law and RHI's attendant right to a jury trial on the allegations contained in that count. "Maryland Rule 345 b (made applicable to demurrers in equity by Rule 373) is clear that the party filing a demurrer *must* set out *specifically* his *grounds* for the demurrer and the trial court will not consider any grounds not specifically alleged." *Hall v. Barlow Corporation,* 255 Md. 28, 41, 255 A. 2d 873 (1969) and cases cited therein. Therefore, confronted with a decision that the claim for damages should be presented in a separate law case, rather than waiting for a final judgment and appealing that ruling, as already noted, Shoreham accepted it and filed this action on the law side of the court. But, appellee now urges that, since the claim might have been brought in the equity suit, it is barred here. The *Restatement of Judgments,* § 67 (1942) discusses this issue and states that:

> "Where in an action the court holds that the plaintiff cannot enforce a particular claim in that action on the ground that he can enforce it only in a separate action, the judgment does not preclude the plaintiff from enforcing the claim in another action, although in the second action it appears that the holding of the court in the first action was erroneous."

We agree with the rationale for this statement as expressed in comment a of that section:

> "The ruling by the court in the first action that the plaintiff cannot recover on a particular claim in that action on the ground that it can be enforced

only in a separate action is res judicata and therefore binding between the parties in a subsequent suit in which the same question is raised. This is in accordance with the doctrine of direct estoppel, that where an issue is actually litigated and determined in an action, the determination is conclusive in any subsequent action between the parties based upon the same cause of action (see § 45, Comment *d*). The purpose of the rules of res judicata is to prevent the parties in a second action from relitigating matters which were litigated or should have been litigated by them in the first action. Where a party was precluded by the court from litigating a claim in the first action on the ground that it should be litigated in a separate action, the rules of res judicata do not preclude him from litigating it in a separate action; on the contrary his right to litigate it in a separate action is res judicata.

The rule stated in this Section is applicable whether or not the defendant is taking inconsistent positions in the two actions. It would be unfair to the plaintiff to permit the defendant successfully to contend in the first action that the plaintiff cannot enforce a claim in that action because he should bring a separate action to enforce it, and in the second action to contend the opposite. The rule is applicable, however, even though the defendant does not take inconsistent positions.

It is immaterial that the plaintiff did not appeal from the ruling of the court in the first action. Where the plaintiff is defeated in the first action by an erroneous ruling on the merits of his claim and he takes no further steps in the action to have the judgment reversed, he is bound by the judgment, and cannot maintain a second action to enforce his claim. The result is the same where the court makes an erroneous ruling as to the amount of damages to which he is entitled. The situation is

different, however, where the ruling is based not on a denial of his claim or as to the amount of his claim but only upon his right to recover in the particular action."

Since Count IV was eliminated when RHI's demurrer to it was sustained, the issue of damages raised in that count was not decided on the merits in the equity suit. In fact, that claim could not have been maintained in the suit as the chancellor ruled that it should be brought in a separate law action. Therefore, the final decree in the equity case is not res judicata so as to bar the claim here; rather, it is res judicata that the claim must be brought at law. Under the view we take of this issue, it is unnecessary to decide whether RHI had, by filing its demurrer and then delaying in raising this defense, waived its right to plead res judicata or is estopped from doing so. However, we look askance at RHI's seeking the elimination of the damage claim from the equity suit on the grounds of its entitlement to a jury trial and then, after Shoreham acted as appellee desired, obtaining a continuance until the equity case was concluded and following this asserting that appellant is barred by not seeking damages in the prior equity suit.

In sum, we conclude that Shoreham neither was required to nor did it make an election of remedies in the prior equity case and was not barred by the doctrine of res judicata from now litigating the issue of damages. As the trial court erroneously decided otherwise, we will reverse its judgment and remand the case for a trial where that issue can be determined. Then, hopefully, once and for all, this protracted litigation can finally be ended.

*Judgment reversed and case remanded for further proceedings.*

*Costs to be paid by appellees.*