966 F.2d 1442
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
v.
Thomas Richard LAMAY; Deborah A. LAMAY, Plaintiffs-Appellees,
Jeffrey D. GRANT, Defendant-Appellant.
 No. 91-1169.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 3, 1992
Decided: June 25, 1992
 
 Argued: C. Lamar Garren, Piper & Marbury, Baltimore, Maryland, for Appellant.
 Donna M. Larkin, Weaver & Bendos, Baltimore, Maryland, for Appellees.
 On Brief: Deborah Brand Baum, Shaw, Pittman, Potts & Trowbridge, Washington, D.C., for Appellant.
 Before RUSSELL and LUTTIG, Circuit Judges, and SIMONS, Senior United States District Judge for the District of South Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 This appeal arises from a sale of real property by Jeffrey D. Grant, to Thomas R. LaMay and Deborah A. LaMay. The trial below resulted in a jury verdict for $58,000.00 in favor of the LaMays. Grant appealed, challenging the final judgment and the district court's rulings denying in whole or in part his motions for summary judgment, for judgment n.o.v., for a new trial, and for remittitur. We affirm.
 
 
 2
 The home sale contract between the buyers and seller agreed that the property was being sold "as is," and further that the seller promised to furnish, at his own expense, a certificate from a licensed pest control company that the building was free and clear of any visible infestation by termites and other wood boring insects. The sales contract contained a provision that if treatment and/or repairs were needed, the seller was obligated to take care of them at his own expense.
 
 
 3
 The sales contract was executed by the parties on June 10, 1988. On August 11, 1988, Appellant Grant arranged with Yardley's Pest Control Company to perform the inspection of the property as required by the sales agreement. For several years, Yardley Pest Control Company had inspected annually the subject property for Grant. It had never reported detecting termites during any of these inspections. However, one incident of powder post beetle infestation was treated by Yardley in 1987.
 
 
 4
 After the parties closed the sale, appellees LaMay learned that Yardley's pest control license from the Maryland Department of Agriculture had expired approximately six weeks before it inspected the property because of non-payment of a renewal fee. The LaMays do not contend that Grant had any knowledge of the fact that Yardley's license had not been renewed at the time of its inspection.
 
 
 5
 Yardley's inspection certificate stated that there was "no visible evidence of wood-destroying insects." Neither did it report that there was any visible evidence of damage by insects to the property, even though this information was required by the language of the certificate.
 
 
 6
 The LaMays admitted at trial that Grant never made any specific representations to them regarding termites or wood-destroying insects, but asserted that they would not have purchased the property had they known that Yardley's was unlicensed, or that there was any evidence of wood-destroying insects.
 
 
 7
 About two weeks after moving into the house, Mr. LaMay entered the crawl space under the house where he observed wood damage. He arranged for another pest control company to inspect the property. This company found extensive damage by termites and other insects. Its inspection reported that the damage to the property was the second worst case it had found in its 21 years experience; further, that in its professional opinion a competent pest control company would never have failed to discover the damage from a proper visual inspection. Its report also noted very bad structural damage from water, termites, and powder post beetles.
 
 
 8
 The evidence at trial substantiated that Grant had previously been in the areas of extensive damage, and in fact made repairs to those areas. Grant had placed a jack under a damaged beam on the West side of the house, and other damaged beams would have been evident to him in the area where he placed electrical wire while installing a hot tub. When the new carpeting put in by Grant was removed, deteriorated wood flooring from termite or bug infestation was exposed. Under the East side of the house, extra support had been provided where there was extensive damage. The support consisted of a concrete pad with cinder blocks and wood stacked on top of it. According to testimony by a contractor, those repairs were made within a year or two before his inspection of the property. The name "J. Grant" was sketched into the concrete pad. Thus, there was ample evidence to support a jury finding that Grant knew of the termite damage; further, that he knew, or should have known, that the termite certificate should not be relied upon by the LaMays.
 
 
 9
 Prior to trial, the district court had granted Grant's motion for summary judgment in part as to a portion of the breach of contract claim. The court held that the breach of contract claim could not be based on the scope of the termite certificate. The case was submitted to the jury on the balance of the breach of contract cause of action and on the theory of negligent misrepresentation, based on the LaMays' contention that Grant knew of the termite infestation but negligently failed to disclose this fact to them when he gave them the clean termite certificate.
 
 
 10
 * Grant claims that the trial court wrongly instructed the jury as to the negligent misrepresentation claim; that Maryland law does not recognize a claim for negligent misrepresentation based on these facts; and that there was insufficient evidence that Grant knew, or should have known, that the termite certificate was unreliable.
 
 
 11
 We find no error in the district court's instructions about negligent misrepresentation under these facts. The district court made it clear that the representation in question was Grant's implicit representation that the termite certificate was reliable when Grant knew, or should have known, that it was not. The district court properly recognized that the LaMays had not bargained for a warranty that there were no termites on the property, but rather they bargained for a professional and competent termite inspection done by a licensed pest control company, and the issuance of a certificate that they could reasonably rely upon. The implicit representation recognized by the district court's instructions was made by Grant when he provided the termite certificate. The jury was instructed by the trial court that Grant assumed the duty of ordinary care in connection with providing a clean termite certificate. Thus, if Grant knew, or should have known, that the certificate was unreliable, then the jury could have found him negligent in providing the apparently clean certificate. The jury's verdict indicated that they found that anyone who went into the areas where Grant had been would have seen infestation by wooddestroying insects.
 
 
 12
 Moreover, there was ample evidence that Grant had physically been in the areas of damage, and that he therefore should have known that the certificate was unreliable. The most significant of these bits of evidence was the appearance of his signature as"J. Grant" sketched into the concrete at the base of a recent support to an area where there was extensive damage.
 
 
 13
 Grant also urges that under Maryland law a plaintiff must prove more than non-disclosure, and more than mere representations regarding the general condition of a house. These arguments are unpersuasive because the seller had an affirmative duty to provide a clean termite certificate from a licensed pest control company. Under the contract terms, the buyers had the right to reasonably rely on such a certificate provided by the seller. This contrasts with the cases relied upon by Grant, where there was no duty on the part of the seller to do or say anything with respect to the presence of termites.
 
 
 14
 Grant also contends that the "as is" clause in the contract shields him from the charge of negligent misrepresentation. We disagree. The "as is" clause is unavailing to Grant because the clause itself states that "the property is to be sold in an as is condition unless otherwise specified in the agreement." We conclude that the termite clause is a contrary specification, since it provides that the seller must pay for any treatment or repair necessary to obtain a clean termite certificate.
 
 II
 
 15
 Grant urges that the contract merged into the deed. While under Maryland law, the prima facie presumption is that a contract of sale merges into a deed, that presumption is negated by a contract provision that the representations in the contract survive the settlement. Randolph Hills, Inc. v. Shoreham Developers, 292 A.2d 662, 668 (Md. 1972).
 
 
 16
 In this case, the contract contained the following language: "This contract shall survive delivery of the deed." We therefore find no merit in Grant's merger argument.
 
 
 17
 Grant also urges that the lapse of Yardley's license was not a material breach of the contract. This argument ignores the undisputed evidence that the LaMays would not have proceeded to settlement had they known that Yardley was not a properly licensed pest control company. It also ignores the district court's jury charge that, in order to find on the breach of contract claim, the jury had to conclude by a preponderance of the evidence that (1) Yardley's inspection was not competently done, (2) that a licensed inspector would have done a competent inspection, and (3) that a competent inspection would have disclosed visible infestation by termites or other insects.
 
 III
 
 18
 Grant contends that the damages had to flow from the fact that Yardley's license had recently lapsed. We disagree. The negligent misrepresentation by Grant was not merely that Yardley was a licensed pest control company. Rather, it included the representation that the Yardley report could be relied upon by the LaMays in their decision whether to proceed to settlement. On that basis, there was sufficient evidence for the jury to conclude that the LaMays' damages proximately resulted from Grant's negligent misrepresentation.
 
 
 19
 Because we find no merit in Grant's various assignments of error, the rulings and final judgment of the district court are affirmed.
 
 AFFIRMED